MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2014 ME 89
Docket:        Cum-13-536
Argued:        May 14, 2014
Decided:       July 3, 2014

Panel:         ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

BANK OF AMERICA, N.A.

v.

SCOTT A. GREENLEAF et al.

GORMAN, J.

[¶1]  Scott A. Greenleaf appeals from a judgment of foreclosure entered in the District Court (Bridgton, *Mulhern, J.*) in favor of Bank of America, N.A. (the Bank).[1]  Greenleaf challenges the Bank's standing to foreclose, the court's finding that the Bank established each fact necessary to obtain a foreclosure judgment, and the court's admission of certain evidence at trial.  Greenleaf also contends that the court erred by imposing an inadequate sanction on the Bank for violating the rules of summary judgment practice.  We agree that the Bank lacks standing to seek foreclosure of the property, and we vacate the judgment.

---

[1]  The Jerome N. Frank Legal Services Organization and the National Consumer Law Center filed a joint amicus curiae brief.

2

## I. BACKGROUND

[¶2]  In November of 2006, Scott A. Greenleaf executed a promissory note in the amount of $385,000 to Residential Mortgage Services, Inc. (RMS).  On the same date, Scott and Kristina Greenleaf[2] signed a mortgage on property in Casco securing that debt.  The mortgage listed RMS as the "lender" of the $385,000 and Mortgage Electronic Registration Systems, Inc. (MERS) as the "nominee" for the lender.

[¶3]  In August of 2011, the Bank instituted foreclosure proceedings against the Greenleafs in the District Court.[3]  *See* 14 M.R.S. §§ 6321-6325 (2013).  The Bank filed a motion for summary judgment in July of 2012, which the court (*Powers, J.*) dismissed as untimely.  On Greenleaf's motion, the court also sanctioned the Bank for failing to comply with the filing requirements of M.R. Civ. P. 56(h)(1).  More specifically, the court determined that the Bank's statements of material fact were "jumbles [of] multiple sentences" rather than a

---

[2]  Kristina signed the note and mortgage as "POA" for Scott.  She also signed the mortgage on her own behalf.  The complaint named both Scott and Kristina Greenleaf, and both of them attended an unsuccessful mediation in January of 2012.  Soon thereafter, Kristina sent a letter to the court stating that the attorney for the Bank had told her at mediation that she was "not on the mortgage."  She otherwise has not appeared in or defended this proceeding.  The record contains no documentation indicating that Kristina was, in fact, removed from the mortgage.  In addition, she was never dismissed from the litigation, and remains a listed defendant on the foreclosure judgment itself.  Because she has not appealed the judgment of foreclosure or otherwise participated in this appeal, however, any further reference to "Greenleaf" in this opinion is to Scott Greenleaf alone.

[3]  The complaint was initially filed by BAC Home Loans Servicing, LP, f/k/a/ Countrywide Home Loans Servicing, LP (BAC).  By agreement of the parties, the court granted a motion to substitute the Bank as the plaintiff based on its status as successor to BAC by merger.

single concise fact per statement, and that many of the Bank's purported statements of fact inappropriately contained argument or analysis. In addition, the court determined that Attorney John Doonan had inappropriately sought to create a foundation for the admission of the Bank's business records by submitting an affidavit regarding *his* knowledge of the Bank's recordkeeping practices, in which Attorney Doonan also asserted facts about which he lacked any personal knowledge. *See* M.R. Civ. P. 56(e). The court imposed a sanction of $625 (an amount equal to half of Attorney Doonan's flat fee to commence the action, commence service of process, and move for a summary judgment) to be paid by Attorney Doonan personally.[4] The court denied Greenleaf's additional request for attorney fees and costs and his motion for reconsideration as to the amount of the sanction.

[¶4] At a trial held July 23, 2013, the court admitted the following exhibits: the original note; the 2006 mortgage; a recorded document purporting to demonstrate the assignment of Greenleaf's mortgage and note from MERS to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP (BAC); a recorded certification that BAC merged with the Bank effective July 1, 2011; a

---

[4] In doing so, the court doubted whether Attorney Doonan "fully appreciate[d] the gravity of the issues at hand"; stated that, to guide his future practice, Attorney Doonan was "hereby put on notice that all affidavits submitted as part of a summary judgment filing must comply with Rule 56(e) in order to be considered by the court"; and noted that "imposing a sanction upon Attorney Doonan personally [was] more likely to deter future Rule 56 violations going forward."

copy of the notice of default and the right to cure; a printout purporting to show Greenleaf's payment history and amounts owed on the note; and an affidavit verifying that Greenleaf is not in the military. The only witness who testified was Heather Pollock, the Bank's "litigation liaison."

[¶5] By decision dated September 6, 2013, the court entered a judgment of foreclosure in favor of the Bank in the amount of $551,414.36 plus $8969.43 in fees and costs. Greenleaf timely appealed.

## II. DISCUSSION

### A.   Standing

[¶6] We first address Greenleaf's threshold argument that the Bank lacked standing to seek foreclosure of the property. We review the facts underlying a determination of standing for clear error, *Bissias v. Koulovatos*, 2000 ME 189, ¶ 6, 761 A.2d 47, and we review the court's ultimate determination of standing de novo as an issue of law, *Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2010 ME 79, ¶ 7, 2 A.3d 289.

[¶7] As a prudential matter, "we may limit access to the courts to those best suited to assert a particular claim." *Id*. ¶ 14 (quotation marks omitted). "[S]tanding" defines those best-suited parties; it refers to the minimum interest or injury suffered that is likely to be redressed by judicial relief. *Id*. Every plaintiff seeking to file a lawsuit in the courts must establish its standing to sue, no matter

the causes of action asserted. *Id.* Just what particular interest or injury is required for standing purposes and the source of that requirement—whether statutory- or common law-based—varies based on the type of claims being alleged. *JPMorgan Chase Bank v. Harp*, 2011 ME 5, ¶ 8, 10 A.3d 718.

[¶8]  In Maine, foreclosure is a creature of statute, *see* 14 M.R.S. §§ 6101-6325 (2013), and thus, standing to foreclose is informed by various statutory provisions. The very same statutory provisions that govern standing also provide a basis for evaluating a foreclosure claim on its merits. Given this overlap in source, we have not always clearly distinguished between issues of standing and issues of proof. We do so today.

[¶9]  Title 14 M.R.S. § 6321,[5] states that "the mortgagee or any person claiming under the mortgagee" may seek foreclosure of mortgaged property. *See*

---

[5]  Title 14 M.R.S. § 6321 (2013) provides, in pertinent part:

> After breach of condition in a mortgage of first priority, the mortgagee or any person claiming under the mortgagee may proceed for the purpose of foreclosure by a civil action against all parties in interest in either the Superior Court or the District Court in the division in which the mortgaged premises or any part of the mortgaged premises is located, regardless of the amount of the mortgage claim.

> . . . .

> The foreclosure must be commenced in accordance with the Maine Rules of Civil Procedure, and the mortgagee shall within 60 days of commencing the foreclosure also record a copy of the complaint or a clerk's certificate of the filing of the complaint in each registry of deeds in which the mortgage deed is or by law ought to be recorded and such a recording thereafter constitutes record notice of commencement of foreclosure. The mortgagee shall further certify and provide evidence that all steps mandated by law to provide notice to the mortgagor pursuant to section 6111 were strictly performed. The

6

*Bank of Am., N.A. v. Cloutier*, 2013 ME 17, ¶ 15, 61 A.3d 1242. "[A] mortgagee is a party that is entitled to enforce the debt obligation that is secured by a mortgage." *Saunders*, 2010 ME 79, ¶ 11, 2 A.3d 289 (emphasis omitted). Because foreclosure regards two documents—a promissory note and a mortgage securing that note—standing to foreclose involves the plaintiff's interest in both the note and the mortgage. *See, e.g.*, *JPMorgan Chase Bank v. Harp*, 2011 ME 5, ¶ 9, 10 A.3d 718 (stating that the plaintiff bank's failure to establish its ownership of the mortgage renders it "vulnuerable to a motion . . . challenging [its] ability to foreclose" as a matter of standing); *Saunders*, 2010 ME 79, ¶ 15, 2 A.3d 289 ("Without possession of or any interest in the note, [a party] lack[s] standing to institute foreclosure proceedings and [may] not invoke the jurisdiction of our trial courts.").

1. The Note

[¶10] Because a mortgage note is a negotiable instrument, 11 M.R.S. § 3-1104(1) (2013), the enforceability of the plaintiff's interest in the note is governed by Maine's Uniform Commercial Code (U.C.C.), 11 M.R.S. § 3-1301

mortgagee shall certify proof of ownership of the mortgage note and produce evidence of the mortgage note, mortgage and all assignments and endorsements of the mortgage note and mortgage. The complaint must allege with specificity the plaintiff's claim by mortgage on such real estate, describe the mortgaged premises intelligibly, including the street address of the mortgaged premises, if any, which must be prominently stated on the first page of the complaint, state the book and page number of the mortgage, if any, state the existence of public utility easements, if any, that were recorded subsequent to the mortgage and prior to the commencement of the foreclosure proceeding and without mortgagee consent, state the amount due on the mortgage, state the condition broken and by reason of such breach demand a foreclosure and sale. . . .

(2011).[6] *Wells Fargo Bank, N.A. v. Burek*, 2013 ME 87, ¶ 18, 81 A.3d 330; *see* 11 M.R.S. § 1-1101(1) (2013). Section 3-1301 permits a party to enforce a note if it is the "holder" of the note, that is, if it is in possession of the original note that is indorsed in blank.[7] 11 M.R.S. § 1-1201(5), (21)(a) (2013); 11 M.R.S. § 3-1301(1).

[¶11] This is precisely what the Bank established and the court found in this matter; as the possessor of a note indorsed in blank, the Bank proved its status as the holder of the note and therefore enjoys the right to enforce the debt. *See* 11 M.R.S. § 1-1201(5), (21)(a); 11 M.R.S. § 3-1301(1); *Deutsche Bank Nat'l Trust Co. v. Wilk*, 2013 ME 79, ¶ 10, 76 A.3d 363 (concluding that the bank's possession of the note, which was indorsed in blank, supported the court's finding that the bank was the holder of the note); *Cloutier*, 2013 ME 17, ¶ 18, 61 A.3d 1242 ("The parties do not dispute that Bank of America is a holder entitled to enforce the note. Bank of America currently has possession of the note, which is endorsed in blank.").

---

[6] Title 11 M.R.S. § 3-1301 has since been amended, but not in any way that affects this appeal. P.L. 2011, ch. 691, § D-3 (effective May 22, 2012) (codified at 11 M.R.S. § 3-1301 (2013)).

[7] The U.C.C. defines a "[h]older" to include "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." 11 M.R.S. § 1-1201(21)(a) (2013). A "[b]earer" is "a person in control of a negotiable electronic document of title or a person in possession of a negotiable instrument, negotiable tangible document of title or certificated security that is payable to bearer or indorsed in blank." 11 M.R.S. § 1-1201(5) (2013). Section 3-1301 allows others—"[a] nonholder in possession of the instrument who has the rights of a holder" and "[a] person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 3-1309 or 3-1418, subsection (4)"—to enforce notes as well.

8

## 2. The Mortgage

[¶12] The interest in the note is only part of the standing analysis, however; to be able to foreclose, a plaintiff must also show the requisite interest in the mortgage. Unlike a note, a mortgage is not a negotiable instrument. *See* 5 Emily S. Bernheim, *Tiffany Real Property* § 1455 n.14 (3d ed. Supp. 2000). Thus, whereas a plaintiff who merely holds or possesses—but does not necessarily own—the note satisfies the note portion of the standing analysis, the mortgage portion of the standing analysis requires the plaintiff to establish *ownership* of the mortgage.[8] *See Harp,* 2011 ME 5, ¶ 9, 10 A.3d 718. In *Wilk,* for example, Deutsche Bank was able to satisfy the note portion of the analysis by establishing that it was the holder of the note. 2013 ME 79, ¶ 10 & n.3, 76 A. 3d 363. In its attempt to establish its interest in the mortgage, Deutsche Bank produced a series of mortgage assignments from the original lender leading to OneWest Bank, and then from One West to Deutsche Bank. The purported assignment from OneWest to Deutsche Bank, however, was dated two weeks before OneWest had acquired the mortgage from its predecessor. *Id*. ¶ 12. Notwithstanding Deutsche Bank's adequate interest in the note, we vacated the judgment of foreclosure because

---

[8] As in any matter, an agent has only those powers given to it by the owner. *See, e.g.*, 18-A M.R.S. § 5-914(a)(3) (2013) (stating that an agent may "[a]ct only within the scope of authority granted [by the principal]."); *J & E Air, Inc. v. State Tax Assessor*, 2001 ME 95, ¶ 14, 773 A.2d 452 (noting that an agent is "continuous[ly] subject[ed] to the will of the principal"). Thus, an agent for the owner of the mortgage has the power to foreclose on behalf of the owner *if the agent is given that power by the owner.*

Deutsche Bank failed to introduce any evidence that it owned the mortgage.[9]
*Id.* ¶ 22.

[¶13]    Here, in an attempt to establish its ownership of Greenleaf's mortgage, the Bank offered and the court admitted the original mortgage, a mortgage assignment, and a certification of a merger.  The first of these documents establishes that the Greenleafs executed a mortgage on November 30, 2006, naming RMS as the lender and MERS as the lender's nominee.  In the second document, which is dated April 23, 2011, and signed by Aida Duenas, "assistant secretary," MERS purports to assign the Greenleaf mortgage to BAC.  To explain why this 2011 assignment fails to support the Bank's claim that it owns the mortgage, we return to the language in the 2006 mortgage.  In its definitional section, the mortgage states:

> (C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.  **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**
>
> (D) **"Lender"** means RESIDENTIAL MORTGAGE SERVICES, INC
>
> . . . .

---

[9]  We did not make clear in *Wilk,* however, that the bank's failure to establish its ownership of the mortgage was an issue of standing,

[Borrowers] mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors and assigns), with mortgage covenants, subject to the terms of this Security Instrument, to have and to hold all of the Property to MERS (solely as nominee for Lender and Lender's successors and assigns) and to its successors and assigns, forever. . . . [Borrowers] understand and agree that MERS holds only legal title to the rights granted by [Borrowers] in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

> (A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

> (B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

. . . .

[Borrowers] grant and mortgage to MERS (solely as nominee for Lender and Lender's successors in interests) the Property described [below].

[¶14]    We have already analyzed this exact language in *Saunders*, 2010 ME 79, ¶ 9, 2 A.3d 289.   We concluded that, notwithstanding its reference to MERS as the "mortgagee of record," the mortgage in fact granted to MERS "only the right to record the mortgage" as the lender's nominee, and "having only that right, MERS [did] not qualify as a mortgagee pursuant to our foreclosure statute."[10] *Id*. ¶¶ 10-11 (quotation marks omitted).

---

[10]  A nominee is "a person designated to act in place of another, usually in a very limited way, or a party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others."  *Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2010 ME 79, ¶ 10, 2 A.3d 289 (alteration omitted) (quotation marks omitted).

[¶15]  As in *Saunders*, despite the language in Greenleaf's mortgage that suggests otherwise, Greenleaf's mortgage did not, as a matter of law, grant to MERS any right to foreclose on the property.  Rather, the mortgage conveyed to MERS only the right to record the mortgage as nominee for the lender, RMS.  There is also no evidence in the record purporting to demonstrate that MERS acquired any authority with respect to Greenleaf's mortgage by any means other than that defined in the mortgage itself.

[¶16]  When MERS then assigned its interest in the mortgage to BAC, it granted to BAC only what MERS possessed—the right to record the mortgage as nominee—because MERS could not have granted to another person or entity any greater interest in the mortgage than that enjoyed by MERS.  *See Sturtevant v. Town of Winthrop*, 1999 ME 84, ¶ 11 n.4, 732 A.2d 264 (stating that "an assignee has no greater rights than his assignor"); *Arey v. Hall*, 81 Me. 17, 22, 16 A. 302 (1888) ("[T]he assignee can have no greater right . . . than the assignor.").

[¶17]  Likewise, through the certification that BAC merged with the Bank, the Bank established that it had obtained from BAC only that which BAC possessed—again, the right to record the mortgage as nominee.  Nor did the Bank offer any evidence of any independent assignment of the mortgage from RMS to MERS, Countrywide, BAC, or the Bank.  *Cf. Burek*, 2013 ME 87, ¶¶ 5, 21 & n.7, 81 A.3d 330 (distinguishing *Saunders* where the lender executed a separate

12

assignment "expressly transferr[ing] the right to enforce the note secured by the mortgage to MERS"). In short, the record demonstrates a series of assignments of the right to record the mortgage as nominee, but no more. In the absence of any evidence that the Bank owned Greenleaf's mortgage, we conclude that the Bank lacked standing to seek foreclosure on the mortgage and accompanying note. We vacate the foreclosure judgment on this basis.[11]

B.     Elements of Proof to Foreclose

[¶18]  Even if we were to reach the merits of the foreclosure, however, we would be compelled to vacate the judgment. In *Chase Home Finance LLC v. Higgins*, we set forth the eight elements of proof to support a judgment of foreclosure:

- the existence of the mortgage, including the book and page number of the mortgage, and an adequate description of the mortgaged premises, including the street address, if any;

---

[11]  The Bank relies on *Culhane v. Aurora Loan Services of Nebraska*, 708 F.3d 282 (1st Cir. 2013), to support its argument that MERS is empowered to assign mortgages. We do not read *Culhane* to suggest that, in a Maine foreclosure action, a document containing language as in Greenleaf's mortgage conveys to MERS the ability to assign a greater interest in the property than the right to record the mortgage as nominee. Rather, in *Culhane*, the First Circuit specifically stated that "[t]he substantive law of Massachusetts control[led its] inquiry," *id.* at 286, and we have distinguished the holdings of other jurisdictions allowing MERS to foreclose as the "mortgagee of record" in such circumstances when those jurisdictions—like Massachusetts and unlike Maine—allow non-judicial foreclosures. *See id.* at 288; *Saunders*, 2010 ME 79, ¶ 13, 2 A.3d 289 (quotation marks omitted).

- properly presented proof of ownership of the mortgage note and [evidence of the mortgage note and] the mortgage, including all assignments and endorsements of the note and the mortgage;[12]

- a breach of condition in the mortgage;

- the amount due on the mortgage note, including any reasonable attorney fees and court costs;

- the order of priority and any amounts that may be due to other parties in interest, including any public utility easements;

- evidence of properly served notice of default and mortgagor's right to cure in compliance with statutory requirements;

- after January 1, 2010, proof of completed mediation (or waiver or default of mediation), when required, pursuant to the statewide foreclosure mediation program rules; and

- if the homeowner has not appeared in the proceeding, a statement, with a supporting affidavit, of whether or not the defendant is in military service in accordance with the Servicemembers Civil Relief Act.

2009 ME 136, ¶ 11, 985 A.2d 508 (footnote omitted) (citations omitted). A plaintiff seeking a foreclosure judgment "must comply strictly with all steps required by statute." *Id*.

[¶19] In this matter, the Bank failed to establish two of the eight foreclosure elements. We discuss each element in turn.

---

[12] We have added the bracketed language to this portion of the *Higgins* requirements to more completely reflect the language of 14 M.R.S. § 6321, on which *Higgins* relies. *Chase Home Finance LLC v. Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508.

14

### 1. Existence of mortgage and property description

[¶20] The court found the existence of a mortgage establishing the street address of the property and the book and page number of its recording in the Cumberland County Registry of Deeds. *See* 14 M.R.S. §§ 2401(3)(G), 6321 (2013); *Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508. These finding are supported by the copy of the recorded mortgage that was admitted at trial. The record therefore supports the court's finding that this requirement was satisfied.

### 2. Proof of ownership of note and evidence of note and mortgage

[¶21] Section 6321 imposes on a foreclosure plaintiff two evidentiary burdens. *Cloutier*, 2013 ME 17, ¶ 13, 61 A.3d 1242. First, the Bank must "certify proof of ownership of the mortgage note." 14 M.R.S. § 6321; *see Cloutier*, 2013 ME 17, ¶ 13, 61 A.3d 1242; *Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508. Although section 6321 requires proof of ownership of the note, it does not require that the plaintiff in a foreclosure action must *be* the owner of the note; rather, if the plaintiff is not the owner, the plaintiff simply must identify who does own the note. *U.S. Bank, Nat'l Ass'n v. Thomes*, 2013 ME 60, ¶¶ 9, 11, 69 A.3d 411; *Cloutier*, 2013 ME 17, ¶¶ 11-21, 61 A.3d 1242; *see* 11 M.R.S. § 3-1301. Here, the court found, and Greenleaf does not dispute, that Federal National Mortgage Association is in fact the owner of the note.

[¶22]   Second, the Bank must "produce evidence of the mortgage note, mortgage and all assignments and endorsements of the mortgage note and mortgage." 14 M.R.S. § 6321.  Here, the Bank offered and the court admitted the note, an allonge to the note, and the endorsements of the note, as well as evidence of the mortgage securing the note and the assignments of that mortgage.  The record therefore supports the court's finding that this requirement was satisfied.[13]

3.    Breach

[¶23] Greenleaf does not dispute that he breached a condition of the mortgage by failing to pay the amounts due on the mortgage note since December of 2008.  *See Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508.  The record therefore supports the court's finding that this requirement was satisfied.

4.    Amount due

[¶24]  The court calculated the amount due on the note plus fees and costs based on Bank Exhibit 6, a document entitled "Account Information Statement," a purported printout from the Bank's computer database about which Pollock also

---

[13]  It is important to note that this analysis is distinct from the analysis of standing.  Although the documentation considered for each issue may be the same, the process of review of that documentation is distinct.  Standing requires that the plaintiff have a minimum legal interest in both the note and mortgage to *seek* a foreclosure, including ownership of the mortgage.  *See JPMorgan Chase Bank v. Harp*, 2011 ME 5, ¶ 9, 10 A.3d 718.  The requirement of proof on the merits instead regards what evidentiary burden the plaintiff must satisfy to *obtain* a foreclosure judgment once the plaintiff's standing has been established.  *See Bank of Am., N.A. v. Cloutier*, 2013 ME 17, ¶¶ 15-17, 61 A.3d 1242 (distinguishing the standing requirement in section 6321 from the "procedural prerequisites" necessary to obtain a foreclosure judgment by a party that has already established its standing).

16

testified. Greenleaf argues that the court erred in admitting Exhibit 6 as a business record, and that without Exhibit 6, the Bank failed to prove the amount due. We agree.

[¶25] The admissibility of a business record is governed by M.R. Evid. 803(6), which dictates both (1) what foundation must be laid to admit such evidence as an exception to the rule excluding hearsay evidence, and (2) the type of witness required to lay that foundation.[14] As to the latter, only the testimony or written declaration of a "custodian or other qualified witness," M.R. Evid. 803(6)—that is, a person "who was intimately involved in the daily operation of the business and whose testimony showed the firsthand nature of his or her knowledge"—may be used to lay the foundation for a business record, *Bank of Me. v. Hatch*, 2012 ME 35, ¶ 7, 38 A.3d 1260 (alteration omitted) (quotation marks

---

[14] Maine Rule of Evidence 803(6) states:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> **(6) Records of regularly conducted business.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business, and if it was the regular practice of that business to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 903(12) or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

omitted).  *See* M.R. Evid. 902(11)-(12).  As to the former, the proponent must establish that

> (1) the record was made at or near the time of the events reflected in the record by, or from information transmitted by, a person with personal knowledge of the events recorded therein;

> (2) the record was kept in the course of a regularly conducted business;

> (3) it was the regular practice of the business to make records of the type involved; and

> (4) no lack of trustworthiness is indicated from the source of information from which the record was made or the method or circumstances under which the record was prepared.

*Id.*; *see also* M.R. Evid. 1001(3) (providing that a printout of data stored in a computer is considered an "original" document for authentication purposes if it is "shown to reflect the data accurately").  We review the facts underlying such an evidentiary ruling for clear error, and we review the court's ultimate decision to admit or exclude the evidence for an abuse of discretion.  *McCollor v. McCollor*, 2014 ME 39, ¶ 16, 87 A.3d 761.

[¶26]  Here, although Pollock did testify that she is a the Bank employee who testifies in trials on behalf of the Bank, she did not testify about what involvement she has in the Bank's recordkeeping operations or how she came to have firsthand knowledge of the Bank's records.  For example, when the court

admitted Exhibit 6,[15] Pollock had not testified as to how long or in what capacities she has worked for the Bank, what type of familiarity with the Bank's records is required for her job as a litigation liaison, or how or how often she accesses those records. Indeed, when asked how she first came to see the printout offered as Exhibit 6, Pollock testified that she had obtained it not through her employment with the Bank, but through the law firm hired to represent the Bank in the foreclosure action. Thus, the court's finding that Pollock qualifies as a custodian of the records within the meaning of Rule 803(6) is not supported by the record.

[¶27] Even if Pollock's qualifications as a custodian of the Bank's records had been established through her testimony, however, she did not testify to how the Bank's payment records are created, checked for accuracy, or accessed, or that that her review of the records showed that the proper processes for creating, checking for accuracy, or accessing were followed in this case. The factual foundation necessary to admit the document as a business record was inadequate, and the admission of and reliance on the exhibit was therefore error. *See Beneficial Me. Inc. v. Carter,* 2011 ME 77, ¶¶ 15-16, 25 A.3d 96; *Smith v. Rideout*, 2010 ME 69,

---

[15] Although some, but not all, of the required foundation was elicited from Pollock on cross-examination, the court's obligation was to consider only that foundation already established before it admitted the exhibit in evidence. *See, e.g., State v. Lewis*, 401 A.2d 645, 647 (Me. 1979) ("Before introducing an exhibit a party is required [to establish its] adequate foundation . . . ."). Moreover, we note that a witness may not testify as to the contents of an exhibit before it is admitted in evidence. *See, e.g., State v. Saulle*, 414 A.2d 897, 899 (Me. 1980) ("[W]e cannot overemphasize the necessity that nothing be exhibited to the [factfinder] until it has first been marked for identification, properly identified, shown to opposing counsel and received in evidence.").

¶ 13, 1 A.3d 441. In the absence of proof of the amount owed, the Bank would not have been entitled to a judgment of foreclosure in any event. *See Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508.

5.     Priority of parties in interest

[¶28]  Greenleaf does not dispute the court's findings that the Bank has the priority interest in the property and Greenleaf has the secondary interest, and that there are no other parties that claim an interest in the property. *See Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508. The record therefore supports the court's finding that this requirement was satisfied.

6.     Notice of default and right to cure

[¶29] Greenleaf also challenges the court's finding that the notice of default and right to cure he received met all the requirements of 14 M.R.S. § 6111.[16]

---

[16]  Although Greenleaf phrases his argument as one regarding the admissibility of the notice of default and right to cure, he does not challenge the relevance of the document to the issues at trial or contend that it is not an accurate copy of the notice he received. Thus, his argument is more accurately regarded as one challenging the notice's compliance with the requirements of 14 M.R.S. § 6111 (2013).

Section 6111 provides, in pertinent part:

§ 6111. Notice of mortgagor's right to cure

1. Notice; payment. With respect to mortgages upon residential property located in this State when the mortgagor is occupying all or a portion of the property as the mortgagor's primary residence and the mortgage secures a loan for personal, family or household use, the mortgagee may not accelerate maturity of the unpaid balance of the obligation or otherwise enforce the mortgage because of a default consisting of the mortgagor's failure to make any required payment, tax payment or insurance premium payment, by any method authorized by this chapter until at least 35 days after the date that written notice pursuant to subsection 1-A is given by the mortgagee to the mortgagor and any cosigner against whom the mortgagee is enforcing the obligation secured by the

20

*See Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508. The court's finding that this requirement was satisfied was based on Bank Exhibit 5, a copy of the notice of default and right to cure sent to Greenleaf, which stated as follows:

mortgage at the last known addresses of the mortgagor and any cosigner that the mortgagor has the right to cure the default by full payment of all amounts that are due without acceleration, including reasonable interest and late charges specified in the mortgage or note as well as reasonable attorney's fees. If the mortgagor tenders payment of the amounts before the date specified in the notice, the mortgagor is restored to all rights under the mortgage deed as though the default had not occurred.

**1-A. Contents of notice.** A mortgagee shall include in the written notice under subsection 1 the following:

**A.** The mortgagor's right to cure the default as provided in subsection 1;

**B.** An itemization of all past due amounts causing the loan to be in default;

**C.** An itemization of any other charges that must be paid in order to cure the default;

**D.** A statement that the mortgagor may have options available other than foreclosure, that the mortgagor may discuss available options with the mortgagee, the mortgage servicer or a counselor approved by the United States Department of Housing and Urban Development and that the mortgagor is encouraged to explore available options prior to the end of the right-to-cure period;

**E.** The address, telephone number and other contact information for persons having authority to modify a mortgage loan with the mortgagor to avoid foreclosure, including, but not limited to, the mortgagee, the mortgage servicer and an agent of the mortgagee;

**F.** The name, address, telephone number and other contact information for all counseling agencies approved by the United States Department of Housing and Urban Development operating to assist mortgagors in the State to avoid foreclosure; and

**G.** Where mediation is available as set forth in section 6321-A, a statement that a mortgagor may request mediation to explore options for avoiding foreclosure judgment.

. . . .

An itemization of all past due amounts, including, but not limited to, reasonable interest and late charges, attorney's fees and other reasonable fees and costs, causing the loan to be in default is as follows:

| | |
|---|---|
| 1 Payment @ $2,866.83 | $ 2,866.83 |
| 21 Payments @ $2,877.10 | $60,419.10 |
| Payment due October 1, 2010 | $ 2,877.10 |
| Payment due November 1, 2010 | $ 2,877.10 |
| Late Charges | $ 2,484.51 |
| Suspense/Partial Payment | ($ 1,519.82) |
| Attorney Fees & Costs | $ 100.00 |

**TOTAL TO CURE DEFAULT\*:** **$70,104.82**

***\*Contact the servicer to obtain an up to date figure for outstanding attorney fees, unpaid taxes and costs before sending payment.***

. . . . Please contact BAC Home Loans Servicing, LP at (800) 699-0107 to obtain an up to date figure before sending payment.

Greenleaf contends that because the notice instructed him to contact the Bank for the final payoff amount, the notice does not meet the requirements of section 6111 that the notice must contain an "itemization of any other charges that must be paid in order to cure the default," 14 M.R.S. § 6111(1-A)(C).

[¶30]   To analyze the level of specificity required for this itemization, we must look to the purpose of the statute as explained by its language. *See Savage v. Me. Pretrial Servs., Inc.*, 2013 ME 9, ¶ 7, 58 A.3d 1138 (stating that legislative intent is first determined according to the plain language of the statute). Section 6111 affords a mortgagor a period of time within which he has a right to cure any

default on the mortgage before the mortgagee may "accelerate maturity of the unpaid balance of the obligation or otherwise enforce the mortgage because of a default." 14 M.R.S. § 6111(1). The notice of default is the document that sets that right to cure in motion; the mortgagee is prevented from seeking any remedy for the default "until at least 35 days after the date that written notice . . . is given by the mortgagee to the mortgagor." 14 M.R.S. § 6111(1).

[¶31] Although, in other contexts, the payoff amount changes over time due to the interest accruing and attorney fees accumulating from continuing efforts to recover on the loan, *see, e.g.*, 14 M.R.S. § 6324 (defining a surplus or deficiency from a foreclosure sale with reference to "the sum due the mortgagee as established by the court with interest plus the expenses incurred in making the sale"), section 6111 effectively freezes such additions to the payoff amount during the cure period. Because the amount due as stated in the notice of default is the precise amount that the mortgagor has thirty-five days to pay in order to cure the default, the amount due is not, as the Bank suggests, open to any further accrual during that period. Given our clear directive that foreclosure plaintiffs must strictly comply with all statutory foreclosure requirements, *Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508; *Camden Nat'l Bank v. Peterson*, 2008 ME 85, ¶ 21, 948 A.2d 1251, and in light of the purposes served by section 6111, we agree with Greenleaf that the notice of default he received from the Bank did not comply with

section 6111. This, too, provides an independent basis on which we could vacate the foreclosure judgment.

7. Completion of mediation

[¶32] The record establishes, and there is no dispute, that the parties submitted to mediation in January of 2012 and that the mediation did not resolve the matter. *See* 14 M.R.S. § 6321-A; M.R. Civ. P. 93; *Higgins*, 2009 ME 136, ¶ 11 & n.3, 985 A.2d 508. The record therefore supports the court's finding that this requirement was satisfied.

8. Military service

[¶33] Because Greenleaf was not defaulted, the requirement of establishing that he was not serving in the military pursuant to the Servicemembers Civil Relief Act, 50 U.S.C.A. app. § 521 (West, Westlaw through P.L. 113-93 (excluding P.L. 113-79) approved 4-1-14), does not apply. *See* M.R. Civ. P. 55(b)(4); *Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508.

[¶34] We conclude that the Bank failed to prove that it had the requisite interest in the mortgage to establish its standing to pursue a foreclosure action against Greenleaf. Moreover, the Bank's failure to satisfy two of the *Higgins*

24

requirements means that, as a matter of law, it was not entitled to a judgment of foreclosure in any event.[17] 2009 ME 136, ¶ 11, 985 A.2d 508.

The entry is:

> Judgment of foreclosure vacated. Order of sanctions for failure to comply with M.R. Civ. P. 56 affirmed.

---

**On the briefs:**

John D. Clifford IV, Esq., Clifford & Golden, PA, Lisbon Falls, and Thomas A. Cox, Esq., Portland, for appellant Scott Greenleaf

John Doonan, Esq., and Jenai Cormier, Esq., Doonan, Graves & Longoria, Beverly, Massachusetts, and Phoebe N. Coddington, Esq., Winston & Strawn LLP, Charlotte, North Carolina, for appellee Bank of American, N.A.

L. Scott Gould, Esq., Cape Elizabeth, J. L. Pottenger, Jr., Esq., Jerome N. Frank Legal Services Organization, New Haven, Connecticut, and Geoff Walsh, Esq., National Consumer Law Center, Boston, Massachusetts, for amici curiae Jerome N. Frank Legal Services Organization and National Consumer Law Center

**At oral argument:**

Thomas Cox, Esq. for appellant Scott Greenleaf

Phoebe Coddington, Esq., for appellee Bank of America, N.A.

Bridgton District Court docket number RE-2011-109
FOR CLERK REFERENCE ONLY

---

[17] We are not persuaded by Greenleaf's additional contention—that the court exceeded its discretion in calculating the sanction for the Bank's violation of the summary judgment requirements of M.R. Civ. P. 56(h). *See Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 17, 743 A.2d 237.