Mc ✓

STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. RE-11-20

U.S. BANK NATIONAL                        )
ASSOCIATION as trustee for RASC           )
2005KS9,                                   )
                                           )
    Plaintiff                              )        ORDER ON DEFENDANT'S MOTION FOR
                                           )               RECONSIDERATION
    v.                                     )
                                           )
THOMAS MANNING,                            )                    REC'D CUMB CLERKS OF(
                                           )                    APR 23 '19 PM 1:19
    Defendant.                             )

Before the Court is Defendant Thomas Manning's Motion for Reconsideration of this

Court's June 1, 2015 Order dismissing this case without prejudice. This motion was originally

filed on June 15, 2015, prior to the Court granting a stay of the case on July 15, 2015, which was

lifted on January 17, 2019. Thereafter, the parties filed supplemental briefs which the Court has

considered in reaching its decision on this motion.

## I.    Background

The procedural history of this case is extensive, and the Court here recounts the facts most

relevant to the motion under consideration.

### A. Early Discovery Dispute, Appeal, and Remand

Plaintiff U.S. Bank National Association as trustee for RASC 2005KS9 (the "Bank") filed

its Complaint for foreclosure in this Court on May 24, 2010. The Bank sought to foreclose on Mr.

Manning's property located at 1 Birchwood Circle, Falmouth, Maine. Following an unsuccessful

mediation, a standard scheduling order was issued on August 22, 2011, setting the discovery

deadline at April 22, 2012. Pursuant to Mr. Manning's consented-to motion, the Court granted an

enlargement of the discovery deadline to July 21, 2012, and on the Bank's consented-to motion,

Plaintiff-David West, Esq./
Elizabeth Lacombe, Esq./Brett Messinger, Esq.

Defendant-Kelly McDonald, Esq.

the Court again extended the discovery deadline to November 30, 2012. On November 9, 2012, the Court entered an Order acknowledging interrogatories and requests for production were served on the Bank on June 21, 2012 and compelling the Bank to respond by November 30, 2012. The Court also ordered the Bank to pay to Mr. Manning $150 within 30 days and warned that failure to comply with the Order would result in dismissal of the case with prejudice. The Court thereafter found the Bank failed to comply and dismissed the case. That dismissal became the subject of an appeal to the Law Court wherein it was found that the Bank timely complied with the payment of the sanction and that dismissal of the case with prejudice was improper under the circumstances at the time. *U.S. Bank N.A. as trustee for RASC 2005KS9 v. Manning*, 2014 ME 96, 97 A.3d 605. The Law Court did not find that imposition of the monetary sanction was unwarranted.

B.  The Dismissal Without Prejudice, Motion for Reconsideration, and Motion to Stay

Following remand from the Law Court, this Court held a status conference on October 14, 2014 and issued an Order requiring the Bank to respond to outstanding discovery requests and produce names and dates of availability of deponents by December 5, 2014. The Court set the discovery deadline at March 6, 2015 with a judicial settlement conference to follow, which was to include a "Bank official with authority to settle." On December 8, 2014, Mr. Manning notified the Court that the Bank had failed to meet the December 5 deadline in all respects and requested a show cause hearing. The Bank filed an opposition to Mr. Manning's request for a show cause hearing on December 11, 2014. On December 15, 2014, the Court reminded the Bank that appearance of new counsel did not change the October 14 Order but nonetheless extended the December 5 deadline by 30 days. While the Bank did respond to Mr. Manning's discovery requests, a witness for deposition was never produced and dates of availability were never provided.

On February 3, 2015, the Bank filed a motion to amend its Complaint and stay the case in light of the issuance of *Bank of America, N.A. v. Greenleaf*, 2014 ME 89, 96 A.3d 700.[1] Specifically, the Bank requested to add a count for declaratory judgment finding it was the equitable mortgagee of the mortgage, and further requested to stay the case until the Court rendered a decision on the declaratory judgment count. The Bank acknowledged that, in accordance with *Greenleaf*, it did not have standing to foreclose because the mortgage was granted to MERS at the time of origination.[2] Mr. Manning opposed the motion to amend and filed a motion for summary judgment, arguing judgment should be entered in his favor because the Bank did not have standing to foreclose. The Bank opposed the motion for summary judgment and filed a motion to voluntarily dismiss without prejudice pursuant to M.R. Civ. P. 41(a)(2).[3]

On June 1, 2015, the Court granted the Bank's motion to voluntarily dismiss without prejudice and without an award of costs and fees to Mr. Manning; this is the Order currently under reconsideration. The Court further concluded it lacked subject matter jurisdiction and could not enter a judgement on the merits and therefore denied Mr. Manning's motion for summary judgment. Mr. Manning filed his motion for reconsideration on June 15, 2015, arguing the Bank's lack of standing does not deprive the Court of subject matter jurisdiction and requesting the Court therefore deny the motions to amend and to dismiss and grant the motion for summary judgment. The Bank opposed the motion for reconsideration on July 9, 2015.

---

[1] *Greenleaf* was decided on July 3, 2014, three weeks before the Law Court issued its decision on the appeal of this case.

[2] The Bank further acknowledged the original lender was no longer in business.

[3] On March 17, 2015, the Court granted Mr. Manning's consented-to motion to enlarge deadlines. The Order extended Mr. Manning's deadline to respond to the motion to dismiss and to the opposition to the motion for summary judgment. The Order also extended the discovery deadline to 60 days after the last of the Court's orders on the motion to amend, the motion for summary judgment, and the motion to dismiss.

The parties filed, and the Court granted, a joint motion to stay the case on July 15, 2015, pending the issuance of the Law Court's opinion in *"Greenleaf II"* (*Bank of America, N.A. v. Greenleaf*, 2015 ME 127, 124 A.3d 1122) due to that case's potential effect on the motion for reconsideration. All deadlines pending at that time, including Mr. Manning's deadline to file a reply to the opposition to the motion for reconsideration, were stayed until 30 days after the issuance of *Greenleaf II*.

*Greenleaf II* was issued on September 22, 2015, and by order on Mr. Manning's consented-to motion, the stay was continued until November 6, 2015. Following a status conference, the Court issued the following Order on October 22, 2015:

Within ten (10) days Manning make demand to Bank; within ten (10) days Bank to respond. Court to set judicial settlement conference for early December and Bank shall produce person with authority to settle. The case is stayed until 30 days after the conclusion of judicial settlement conference.

On February 25, 2016, nearly three months after the Court intended the judicial settlement conference ("JSC") to take place, the Bank filed an objection to Mr. Manning's request for JSC and a motion to lift the stay, arguing the motion for reconsideration had become moot. The Bank contended the parties had engaged in settlement discussions but had been unable to resolve the matter and would continue to be unable to do so regardless of a formal JSC. On July 22, 2016, the Court entered an Order "solely to reiterate for the parties that this court ordered a judicial settlement conference in its order of October 22, 2015." The Court affirmed that it had not changed its position and ordered that a JSC be scheduled within 60 days and that the parties participate in good faith.

C. The Judicial Settlement Conference

On September 19, 2016, by Notice of Setting of Settlement Conference, the parties were ordered to attend a JSC before Justice Walker on September 23, 2016. The Notice stated in bold,

underlined text: "all parties ... must be vested with full settlement authority.... A corporate party must be present in person at the conference through an appropriate representative. That representative must be vested with full authority to enter into any agreements reached at the conference."

On September 23, 2016, the JSC was held but was not concluded on that date. Rather, on October 12, 2016, Justice Walker directed Mr. Manning's attorney to brief the issues discussed in a telephone conference and the Bank's attorney to file an opposition within 21 days thereafter. On November 18, 2016, Mr. Manning filed a motion for contempt, generally arguing that the Bank had not been represented at the JSC by a representative with authority to settle and that the Bank had made a number of misrepresentations to the Court. The Bank filed an opposition on December 15, 2016, and Mr. Manning filed a reply on December 22, 2016. On April 11, 2017, Justice Walker entered an Order stating that he was "less than satisfied with the circular explanations offered by the Plaintiff," but choosing to hold an order on the motion for contempt in abeyance. The parties were ordered to "negotiate fastidiously in good faith a final resolution" and report the results of their efforts by April 28, with a hearing on the motion for contempt to be scheduled if the parties failed to resolve the case by that date. On Mr. Manning's consented-to motion, the deadline for the parties to negotiate was extended to May 12, 2017.

By letter to the Clerk dated May 12, 2017, Mr. Manning's attorney notified the Court that the parties had failed to reach a resolution. He stated that he made an offer of settlement on April 27 and that the Bank had not responded with a counteroffer, argued that the Bank had violated the Court's Order to "negotiate fastidiously in good faith," requested a hearing be set on the motion for contempt, and asked that the Court consider dismissal with prejudice as a sanction. Also on May 12, 2017, the Bank filed a motion the vacate the Court's April 11 Order, arguing that "[o]nce

the Court properly dismissed this case without prejudice on June 1, 2015, this Court divested itself of jurisdiction over the claims and the parties and no further action could have been taken." (Mot. Vacate 6.) The Bank eventually made a settlement offer to Mr. Manning on May 17, 2017, five days after the Court's deadline. The Bank's motion to vacate was denied after hearing on September 6, 2017.

Mr. Manning thereafter supplemented and renewed his motion for imposition of sanctions and/or finding of contempt on October 6, 2017. The hearing on the motion was held on February 9, 2018. While the Bank was unprepared to present evidence, Mr. Manning appeared with, and was permitted to present the testimony of, an expert witness. A second JSC, also unsuccessful, was conducted on May 18, 2018. Justice Walker issued an Order on Motion for Contempt/Sanctions on July 19, 2018, finding the Bank had failed to comply with the terms of the Court's Notice of Judicial Settlement Conference by appearing at the JSC through a representative who did not have full settlement authority. The Court further found the Bank had misrepresented to the Court that the sole offer it made at the JSC contained the best possible terms that Ocwen, the Bank's servicer, could offer under the pooling and servicing agreement ("PSA") and that better terms could not be offered unless the PSA was reformed. Justice Walker ordered the Bank to pay all of Mr. Manning's attorney's fees and costs associated with preparation for and attendance at both JSCs, as well as Mr. Manning's attorney's fees and costs incurred as a result of all work related to or arising out of the efforts to settle the case from the conclusion of the first JSC through the conclusion of the second JSC, including all filings, court appearances, research and writing. Justice Walker concluded:

The court, in its settlement capacity, stops short of issuing a sanction of dismissal with prejudice, as that ultimately and appropriately should be left to the trial judge in her discretion. The court does note, however, that the trial judge may consider the Plaintiff's conduct as herein described and during the course of the litigation

generally as to whether dismissal with prejudice is justified as a final disposition of this interminable case.

(7/19/18 Order at 5-6.) The Bank filed a motion to reconsider the sanctions Order on July 31, 2018, which was denied on August 30, 2018.

### D. The Lifting of the Stay and Supplemental Briefing of the Motion for Reconsideration

On December 18, 2018, the Court entered an Order permitting the parties to file supplemental briefs in support of and opposition to the pending motion for reconsideration, in which the parties were permitted to request different relief from that requested in the original motion and opposition. The stay of this case was lifted on January 17, 2019. The parties timely submitted their supplemental filings, which have been carefully considered by the Court.

## II.     Discussion

### A. *Greenleaf* and its Progeny

Although at first blush, the bulk of this case appears to be more focused on the sideshow than the merits, the case presents a number of legal issues that courts in Maine have repeatedly confronted since the issuance of *Greenleaf*. Indeed, relevant case law has been developing in the background during the entire pendency of this case. Of course, the first legal hurdle in this case arose with the issuance of *Greenleaf*, in which the Law Court held that in a foreclosure case, MERS, as nominee for a lender, does not have the right to assign a mortgage; a bank receiving an assignment from MERS does not own the mortgage; such bank does not have standing to foreclose; and such foreclosure claim is therefore non-justiciable. *Greenleaf*, 2014 ME 89, ¶¶ 15-17, 96 A.3d 700. After *Greenleaf* was issued, the Bank in this case determined it lacked standing to foreclose because MERS was an assignor in its chain of title to the mortgage. This determination prompted the Bank to file its motion to amend and eventually to move for voluntary dismissal and prompted Mr. Manning to move for summary judgment in his favor.

The case was initially stayed while this motion for reconsideration was in the briefing stages in order to await the Law Court's opinion in *Greenleaf II* in hopes that the Law Court would clarify the actions a trial court may take when a bank lacks standing to foreclose. One month before *Greenleaf II* was issued, the Law Court issued *Homeward Residential, Inc. v. Gregor*, holding that when a bank lacks standing, the court cannot decide the merits of the foreclosure case and instead can only dismiss the action. 2015 ME 108, ¶ 24, 122 A.3d 947. In *Greenleaf II*, the Law Court reiterated that when a foreclosure case is non-justiciable, the court cannot address the merits and that it was proper for the trial court to dismiss the case without prejudice. 2015 ME 127, ¶ 9, 124 A.3d 1122. However, the Law Court recognized in these opinions that lack of standing does not affect the Court's subject matter jurisdiction or jurisdiction over the parties. *Homeward Residential, Inc.*, 2015 ME 108, ¶ 24, 122 A.3d 947; *see Greenleaf II*, 2015 ME 127, ¶ 8, 124 A.3d 1122 ("a standing defect does not affect, let alone destroy, the court's authority to decide disputes that fall within its subject matter jurisdiction").

On the very date Justice Walker issued his Order holding the motion for contempt in abeyance and ordering the parties to negotiate a resolution, the Law Court issued an opinion holding that while a court may not enter a judgment on the merits in a non-justiciable foreclosure case, the court may nonetheless dismiss a non-justiciable case with prejudice as a sanction for misconduct. *Green Tree Servicing, LLC v. Cope*, 2017 ME 68, ¶¶ 17-18, 158 A.3d 931 (further explaining "the imposition of a sanction represents the court's determination of a collateral issue: whether the party or attorney has abused the judicial process" (internal alterations and quotation marks omitted)). In *Fannie Mae v. Deschaine*, the Law Court held that a dismissal with prejudice entered as a sanction against a bank that did not have standing operates as a judgment on the merits and bars a future foreclosure action under *res judicata* principles. 2017 ME 190, ¶¶ 17, 37, 170

A.3d 230. The matter now before the Court necessarily draws on *Cope* and *Deschaine* but, as noted by the Bank in its supplemental opposition to this motion, presents a unique twist in that much of the Bank's egregious conduct occurred *after* the Court entered the Order of dismissal without prejudice, which, following the filing of the motion for reconsideration, was subsequently suspended in a procedural purgatory for nearly four years.

Through *Greenleaf* and its progeny, the Law Court has made it clear that a court cannot decide the merits of a foreclosure case when the bank lacks standing. However, trial courts routinely exercise powers over the parties before them that do not implicate standing because they do not result in a decision on the merits. In this case, the Court exercised the powers to stay the case and to order the parties to a JSC and with this Order will exercise the power to sanction a party for misconduct, as was done in *Cope* and *Deschaine*. Clearly, in exercising these powers, the Court has not entered judgment on the merits of the foreclosure and concludes that, given the Court's jurisdiction over the subject matter and the parties, the Court has maintained authority to exercise these powers, and the parties have been required to comply throughout the proceedings.

B. The Bank's Arguments

Given the unusual procedural posture of this case, it is perhaps unsurprising that the Bank's principle arguments against granting the motion for reconsideration are procedural. The Bank contends Mr. Manning has not satisfied the standard for a motion for reconsideration and further argues, with little explanation, that the only timeframe the Court may consider in deciding this motion for reconsideration runs from the July 24, 2014 remand from the Law Court to this Court's June 1, 2015 dismissal Order. In particular as to the second argument, in so arguing, the Bank asks this Court for a free pass to behave improperly during ongoing litigation. Unusual as the procedural posture of this case may be, it does not excuse the Bank's conduct following the entry of the

dismissal Order, and this Court has always retained the authority to sanction improper conduct during the pretrial stage of the litigation. *See* M.R. Civ. P. 16(d) (court may sanction party for failure to comply with orders pertaining to scheduling and settlement conferences); M.R. Civ. P. 37(b)(2)(c) (authorizing sanctions for failure to comply with discovery orders); *see, e.g., U.S. Bank v. Sawyer*, 2014 ME 81, ¶¶ 12-13, 17 (affirming dismissal with prejudice for failure to participate in good faith in Rule 93 mediation).

The Court is particularly troubled by the Bank's decision not to argue against the merits of Mr. Manning's supplemental brief and instead to rest solely on its procedural arguments. As noted by Mr. Manning, this Court, in permitting supplemental briefing on this motion, authorized the parties to request different relief; furthermore, Justice Walker, in his sanctions Order, advised that this Court could consider everything that occurred during the JSC proceedings in ultimately determining whether this case should be dismissed with prejudice.

To assuage any procedural concerns raised by the Bank, the Court notes that before the case was stayed, Mr. Manning had filed the motion for reconsideration, and the Bank had filed an opposition. Because Mr. Manning had not yet filed a reply, he is now correct that the motion had not been fully briefed when the case was stayed. In fact, the joint motion to stay makes it clear that the parties were in agreement that the motion for reconsideration had not been fully briefed, and the parties anticipated the possibility that supplemental briefing may be necessary after the stay was lifted. Regardless of how the supplemental filings are characterized, the Court is now essentially considering Mr. Manning's reply brief on the original motion, the Bank's surreply addressing new material raised in the reply, and a reply to the surreply, all filed with the Court's permission. Thus, the Court finds no reason not to consider any of the information raised in the supplemental filings nor any of the conduct engaged in by the Bank since this litigation was

commenced. Although many circumstances have changed since the dismissal without prejudice was entered, the Court is in full agreement with Mr. Manning that his motion to reconsider may be used to "bring to the court's attention ... new material that could not previously have been presented," M.R. Civ. P. 7(b)(5),[4] including the Bank's conduct during the intervening years since the case was stayed, and that the Court may now reconsider the "terms and conditions ... the court deems proper" in dismissing the Bank's Complaint. M.R. Civ. P. 41(a)(2); *see also Cope*, 2017 ME 68, ¶ 16, 158 A.3d 931 ("terms and conditions" language of Rule 41 grants the court discretion to dismiss a case with or without prejudice).

C. The Merits of the Motion for Reconsideration and the Request for Dismissal with Prejudice

Turning to the merits of the motion, this case might be termed a comedy of errors, except the Court does not take it lightly that nearly a decade of resources have been expended; that the question of Mr. Manning's right to ownership of his home has been held in suspension while the amount of the debt he purportedly owes to the Bank has ballooned tremendously[5]; and that an institutional plaintiff, who is a frequent litigant in this Court, has repeatedly displayed blatant disrespect for this Court's authority. The Court takes very seriously the Bank's refusal to cooperate with Mr. Manning in discovery, willingness to disregard Court orders, and failure to negotiate in good faith even when repeatedly ordered to do so.

To determine whether dismissal is an appropriate sanction, the trial court should consider the specific purpose of the rules, the party's conduct throughout the proceedings, the party's *bona*

---

[4] Mr. Manning's motion was originally filed in a good faith effort to bring to the Court's attention what he believed to be an error in the Court's dismissal for lack of "subject matter jurisdiction." The relationship between standing and jurisdiction has since been discussed at length by the Law Court, and technically, Mr. Manning was correct in his original motion that the Bank's lack of standing did not deprive the Court of subject matter jurisdiction.

[5] According to the Bank's filings, as of July 27, 2018, the amount of Mr. Manning's debt exceeded $930,000. The original note was in the amount of $520,000, and the Bank's 2010 Complaint alleged Mr. Manning owed $631,000.

*fides* in its failure to comply with the rules, prejudice to the other parties, and the need for the orderly administration of justice. *Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 17, 743 A.2d 237. Death-knell sanctions such as dismissal are routinely upheld where a lighter sanction was previously imposed to no avail. *See, e.g., Douglas v. Martel*, 2003 ME 132, ¶¶ 8, 11, 835 A.2d 1099; *Colony Cadillac & Oldsmobile, Inc. v. Yerdon*, 558 A.2d 364, 367 (Me. 1989).

The Court acknowledges that the Bank has already been sanctioned for much of its conduct during the course of this litigation. Had its failures been limited to the early stages of discovery and its conduct during the JSC, the Court would hesitate to impose the further sanction of dismissal with prejudice. However, such is not the case. As mentioned, the Bank was first sanctioned for its failure to diligently participate in discovery[6] and thereafter should have been on notice that the Court would not tolerate further dilatory behavior. Even then, the Bank continued to neglect its discovery duties and, as noted by Mr. Manning, never produced a witness for deposition. Indeed, on October 14, 2014, the Court ordered the Bank to respond to discovery and produce names and dates of availability of deponents by December 5, 2014. After the Bank missed that deadline, the Court granted a 30-day extension. Although the final discovery deadline was extended on March 17, 2015, this extension was granted well after the Bank had disregarded the Court's Order to designate a witness for deposition by January 4.[7]

In affirming death-knell sanctions for refusal to cooperate in discovery and failure to comply with a court order, the Law Court has stated, "a party's failure to cooperate in discovery prior to the entry of a court order compelling compliance constitutes 'conduct throughout the

---

[6] The Bank is correct that the Law Court found the Bank had timely complied with this Court's sanctions Order. The fact remains that the Bank was sanctioned for its failure to participate in the discovery process.

[7] The Bank brushes aside this missed deadline by noting that the parties had turned to motion practice during this time period. The Bank's motion to amend its Complaint was filed on February 3, 2015, nearly a month after the extended deadline to comply with the Court's October 14 Order, which was entered over four years after this litigation was commenced.

proceeding' that may be considered by a court in determining an appropriate sanction for purposes of M.R. Civ. P. 37(b)," further noting, "[o]rdinarily, the court's intervention in discovery matters should be necessary only where there is a legitimate dispute regarding the responsibility of one party to provide certain discovery." *Harris v. Soley*, 2000 ME 150, ¶ 17 *(citing Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 17, 743 A.2d 237); *see also* M.R. Civ. P. 37(b)(2)(C) (authorizing the court to "dismiss[] the action or proceeding" as a sanction for "fail[ure] to obey an order to provide or permit discovery"). Prior to the JSC, the Bank displayed a pattern of dragging its heels in discovery, not only in violation of its duties under the Maine Rules of Civil Procedure, but also in contravention of this Court's orders, requiring Mr. Manning to seek court intervention on more than one occasion.

Moreover, well before the JSC took place, this Court ordered the parties to participate in the JSC and specifically ordered the Bank to appear with a representative with authority to settle. (10/22/15 Order.[8]) After the Bank filed its objection to the JSC, the Court reiterated the Order, further specifying that the parties were to negotiate in good faith. (7/22/16 Order.) Of course, as found by Justice Walker, the Bank neither appeared with a representative with full settlement authority nor negotiated in good faith. Thus, in addition to the September 19, 2016 Notice of Setting of Settlement Conference specifically found by Justice Walker to have been violated by the Bank, the Bank also violated this Court's two previous orders pertaining to the JSC. All told, by the Court's count, the Bank has violated no fewer than five court orders during the pendency of this litigation.

The Court finds it particularly offensive that the Bank was twice granted gifts from the Court which were thoroughly squandered. This Court initially ordered the parties to the JSC with

---

[8] After the remand from the Law Court but prior to the grant of the stay, the Court had previously ordered the parties to a JSC, also expressly ordering the Bank to appear through an official with authority to settle. (10/14/14 Order.)

the understanding that the Bank's ability to foreclose on Mr. Manning's home was severely jeopardized in the wake of *Greenleaf* and its progeny. Had the Court merely dismissed this case without prejudice, the Bank of course would have had the opportunity to rectify its standing problem, but whether it would have been successful in that pursuit has remained in doubt. Thus, the original JSC granted the Bank an opportunity to recover something from Mr. Manning rather than face the very real possibility that it would ultimately recover nothing. The second gift came from Justice Walker when he chose to hold the motion for contempt in abeyance and ordered the parties to attempt to negotiate a resolution. Knowing a finding of contempt and ordering of sanctions were imminent, rather than take advantage of the opportunity to resolve this case amicably, and having made no offers of settlement, the Bank waited until the day the parties were to report to the Court the status of their negotiations to instead file a motion to vacate Justice Walker's Order, frivolously challenging his authority to require the parties to negotiate. Six days later, the Bank finally made an offer of settlement, and then feigned surprise when Justice Walker refused to take that belated offer into consideration when ordering sanctions.

On the whole, the Bank's conduct throughout this nearly decade-long proceeding has been an unacceptable display of disrespect for the judicial process. Further compounding the Court's concerns is the looming fact that the Bank does not even have standing to foreclose on Mr. Manning's home. Given its precarious position since the issuance of *Greenleaf*, the Court would expect not only the respect and compliance demanded of all attorneys and litigants who come before the Court, but a dose of humility in acknowledgment of Mr. Manning's willingness to continue negotiations and the Court's provision of its resources to facilitate that process. Instead, in addition to having repeatedly necessitated the Court's intervention to enforce its routine discovery obligations, the Bank approached the JSC with abject disregard for the Court's

expectations and went so far as to make multiple misrepresentations to the Court and to refuse to negotiate in good faith even when ordered to do so.

In *Deschaine*, the Law Court cautioned that "[i]f we were to shield mortgagees and their attorneys from the preclusive effects of adverse judgments arising from deficient pretrial conduct, we would improperly tolerate and perhaps even foster within that limited group of parties and counsel an inappropriately casual attitude toward the process necessary for the prompt, orderly, and fair administration of justice," citing a number of cases in which "mortgagees have failed to abide by court orders and established rules of court procedure, resulting in dismissals of their complaints." 2017 ME 190, ¶ 34, 170 A.3d 230. The Bank has failed to heed this warning, and the Court will therefore impose the consequence of dismissal with prejudice. Such dismissal will operate as an adjudication on the merits and will bar the Bank from bringing another complaint for foreclosure against Mr. Manning. Further, pursuant to 14 M.R.S. § 6101, Mr. Manning will be awarded his reasonable attorney's fees and costs from July 19, 2018 to the conclusion of this case.

III.    **Conclusion**

For the foregoing reasons, Defendant Manning's Motion for Reconsideration is GRANTED. This case is DISMISSED WITH PREJUDICE. Defendant is directed to file a bill of costs and attorney's fees affidavit within 30 days following the date of this Order. Plaintiff shall file a response within 21 days after the date of Defendant's filing, and Defendant may file a reply within 7 days after the date of the filing of Plaintiff's response.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: _____4 23 19_____

Joyce A. Wheeler, Active Retired Justice
Maine Superior Court

Entered on the Docket: 04 24 2019        15 of 15