MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2013 ME 87
Docket:        Cum-12-489
Argued:        September 10, 2013
Decided:       October 24, 2013

Panel:         LEVY, SILVER, GORMAN, and JABAR, JJ.

## WELLS FARGO BANK, N.A.

v.

## KENNETH BUREK et al.

LEVY, J.

[¶1]  Kenneth and Shelley Burek appeal from a judgment of foreclosure and sale entered in the Superior Court (Cumberland, *Wheeler, J.*) in favor of Wells Fargo Bank, N.A.  The Bureks contend that the court erred in finding that Wells Fargo produced sufficient admissible evidence to merit a judgment of foreclosure pursuant to 14 M.R.S. § 6321 (2012), and in denying a motion to alter or amend judgment pursuant to M.R. Civ. P. 59(e).  Because we conclude that Wells Fargo proved that it had the right to enforce the note and mortgage and that the court did not abuse its discretion in denying the Bureks' Rule 59(e) motion, we affirm the judgment.

## I.  BACKGROUND

[¶2]  In July 2010, Wells Fargo filed a complaint for foreclosure against the Bureks pursuant to 14 M.R.S. § 6321, alleging that the Bureks had defaulted on a

promissory note held by Wells Fargo, thereby breaching a condition of a corresponding mortgage owned by Wells Fargo.[1] To establish that it was the owner of the mortgage and holder of the note, Wells Fargo described and attached several documents, including an October 2004 promissory note and mortgage from the Bureks in favor of the original lender, Union Federal Bank of Indianapolis (UFBI); an October 2005 assignment of the mortgage by UFBI to the Mortgage Electronic Registration Systems, Inc. (MERS); and a February 2009 assignment of the mortgage by MERS to Wells Fargo. The Bureks contested Wells Fargo's status as the owner of the mortgage and holder of the note, but did not specifically deny the authenticity of these documents.

[¶3] The Superior Court held a bench trial in April 2012 at which both parties were represented by counsel. The court admitted in evidence the promissory note, the mortgage, and a loan modification agreement between the Bureks and Wells Fargo. It also admitted into evidence several assignments of the mortgage and alonges to the note.

[¶4] The mortgage and note show that in October 2004, UFBI loaned Kenneth Burek $324,000 in exchange for Burek's promise to repay the loan,

---

[1] The complaint also names three parties in interest: KeyBank, N.A., TD Banknorth, N.A., and the State of Maine, Maine Revenue Services.

secured by a mortgage deed to Kenneth and Shelley Burek's property in Gorham. UFBI properly recorded the mortgage in the Registry of Deeds.

[¶5]    Wells Fargo introduced two assignments of the mortgage into evidence: (1) an October 2005 assignment by UFBI to MERS, purporting to assign the mortgage "together with the note(s) and obligations therein described"; and (2) a February 2009 assignment by MERS to Wells Fargo, purporting to assign the mortgage "and the Note and claim secured thereby."   Both assignments were recorded.   Further, Wells Fargo introduced a November 2009 loan modification agreement between the Bureks and Wells Fargo, which amended the original 2004 mortgage as well as "the Note bearing the same date as, and secured by," the mortgage.   Wells Fargo's witness testified that the loan modification agreement reduced the interest rate of the loan and extended the original loan term as part of what proved to be an unsuccessful effort to assist the Bureks in avoiding foreclosure.

[¶6]    The court also received in evidence an unrecorded October 2004 assignment of the mortgage from UFBI to the Federal National Mortgage Association ("Fannie Mae"), which predated UFBI's assignment to MERS.   The assignment was contained in Wells Fargo's custodial file where the original note and mortgage and other original documents were also kept.   No mention of or reference to this assignment was made by either party during the trial.   The

4

custodial file, consisting of approximately sixty pages, was introduced into evidence without objection from the Bureks, except for their specific challenge to the admission of two allonges for not being affixed to the original note. The Bureks did not bring to the court's attention the unrecorded assignment from UFBI to Fannie Mae until after the court had entered its judgment in favor of Wells Fargo, at which time the Bureks filed a Rule 59(e) motion to alter or amend the judgment.

[¶7] In addition, Wells Fargo introduced an undated allonge indicating that Huntington National Bank, as a successor by merger to UFBI, had transferred the note to Wells Fargo.[2] The original allonge was contained in Wells Fargo's custodial file along with the original note, but the allonge was not attached by staple or glue to the note, and the staple holes on it did not match the staple holes on the note.

[¶8] The Bureks argued before the trial court that Wells Fargo had failed to prove that it was a holder of the note with the right to enforce it because the allonge purporting to show indorsement of the note to Wells Fargo was not affixed to, and therefore was not part of, the assigning document. Wells Fargo countered

---

[2] Wells Fargo also introduced a second allonge showing that Wells Fargo executed a blank indorsement of the note.

that because the allonge and the note were kept in the same custodial file, they were affixed to one another.

[¶9]  The court entered a judgment of foreclosure for Wells Fargo pursuant to 14 M.R.S. § 6321.  The court found that Wells Fargo failed to prove that it was a holder of the note because the allonge reflecting the indorsement of the note from Huntington National Bank to Wells Fargo was not "affixed" to the note as required by 11 M.R.S. § 3-1204(1) (2012).[3]  Nonetheless, the court concluded that Wells Fargo was entitled to enforce the note as a nonholder in possession with the rights of a holder pursuant to 11 M.R.S. § 3-1301 (2012):

> Even though [Wells Fargo] has not established that it is a "holder" of the Note, it has proven that it is entitled to enforce the Note because it is a "nonholder in possession with rights of a holder."  11 M.R.S. § 3-1301(2).  [Wells Fargo] is in possession of the original Note (as evidenced by the custodial file produced to the court at trial . . .) and [Wells Fargo] acquired the rights of First Union Bank of Indianapolis, as holder of the Note, through the assignments of the Mortgage . . . , which by their terms also conveyed all rights in the Notes that the Mortgage secures.

[¶10]  Accordingly, the court entered a judgment of foreclosure for Wells Fargo in the amount of $308,211.21 plus attorney fees and expenses, amounts advanced by Wells Fargo to protect its mortgage security, and post-judgment interest.

---

[3]  The court also determined that even if the allonge were treated as having been affixed to the note, Wells Fargo had failed to prove that Huntington National Bank was a successor bank to UFBI, the original lender.

6

[¶11]  After the court issued its judgment in favor of Wells Fargo, the Bureks filed a motion for findings of fact and conclusions of law pursuant to M.R. Civ. P. 52(a), which the court denied.  The Bureks also filed a motion to alter or amend the judgment pursuant to M.R. Civ. P. 59(e) and another motion seeking findings of fact and conclusions of law, contending that the October 2004 assignment to Fannie Mae that was received in evidence as part of the Wells Fargo custodial file constituted relevant evidence withheld by Wells Fargo.  The court denied the Bureks' motions, and this appeal followed.

## II.  DISCUSSION

[¶12]  The Bureks contend that the trial court erred in entering a judgment of foreclosure because (A) the unrecorded assignment from UFBI to Fannie Mae undermines the court's findings of a chain of assignments from UFBI to MERS and MERS to Wells Fargo, and (B) Wells Fargo failed to produce competent evidence to establish that it was a nonholder in possession with the rights of a holder pursuant to 14 M.R.S. § 6321 and 11 M.R.S. § 3-1301.  We begin with the Bureks' contention regarding the unrecorded assignment.

A.    The Unrecorded Assignment from UFBI to Fannie Mae

[¶13]  The Bureks contend that Wells Fargo knew of the unrecorded assignment from UFBI to Fannie Mae and purposefully withheld it from evidence, and that the post-trial discovery of the assignment buried within Wells Fargo's

custodial file undermines the trial court's findings regarding the chain of assignments to Wells Fargo. Wells Fargo argues that because the Bureks first raised this issue in their Rule 59(e) motion after the court had entered its judgment, the issue is unpreserved for appellate review.

[¶14] We agree with Wells Fargo's contention that because the Bureks failed to assert to the trial court prior to the entry of the judgment that the UFBI-to-Fannie Mae assignment was relevant to the court's determination of the case, the court's failure to treat it as such is unpreserved for appellate review. What is preserved, however, is whether the court acted within its discretion in denying the Bureks' post-judgment Rule 52(a) and Rule 59(e) motions. We review rulings on Rule 52 and Rule 59 motions for an abuse of discretion. *See Desmond v. Desmond*, 2012 ME 77, ¶ 17, 45 A.3d 701 (applying Rule 52); *Ten Voters of Biddeford v. City of Biddeford*, 2003 ME 59, ¶ 11, 822 A.2d 1196 (applying Rule 59).

[¶15] The Bureks do not dispute that they made no discovery requests of Wells Fargo prior to trial, and that at no point during the trial did they introduce testimony regarding or otherwise address the UFBI assignment of the Burek mortgage to Fannie Mae. The Bureks further concede that the original unrecorded assignment was part of Wells Fargo's custodial file, which was admitted into evidence. After the bench trial held on April 4, 2012, the Bureks filed a post-trial

8

memorandum on May 7, 2012, without raising the unrecorded assignment as an issue. After the court entered its judgment on July 18, 2012, the Bureks filed a motion for findings of fact pursuant to M.R. Civ. P. 52(a) on July 25, 2012, again with no mention of the unrecorded assignment. The assignment was first raised as an issue in the Bureks' motion to alter and amend the judgment pursuant to M.R. Civ. P. 59(e) filed on July 30, 2012, nearly four months after trial.

[¶16] Accordingly, there is simply no support in the record for the Bureks' contention that Wells Fargo acted in bad faith by "withholding" the unrecorded assignment.[4] Further, there is no support for the Bureks' additional contention that the court was compelled to find that MERS and Wells Fargo had knowledge of the unrecorded assignment before each recorded their respective assignments. Because the UFBI-to-Fannie Mae assignment was part of an exhibit—Wells Fargo's custodial file—that was received in evidence, the Bureks should have known of its existence prior to the close of evidence, and thereafter, prior to the issuance of the court's judgment. Because Wells Fargo did not withhold evidence of the unrecorded assignment and the Bureks failed to raise the existence of the unrecorded assignment as an issue until well after the court issued its judgment, the

---

[4] Indeed, it was Wells Fargo that introduced into evidence its custodial file and, as part of it, the unrecorded assignment.

court acted well within its discretion in denying the Bureks' request for relief pursuant to Rule 59(e).

B.      Wells Fargo's Right to Enforce the Promissory Note as a Nonholder in Possession with the Rights of a Holder

[¶17]  The Bureks next assert that the court erred in concluding that Wells Fargo was a nonholder in possession of the note with the rights of a holder.  Wells Fargo responds that even if this conclusion was in error, the court should have determined that Wells Fargo was a holder of the note and could enforce it on that alternate basis.  We review a trial court's factual findings underlying a judgment of foreclosure for clear error, *see KeyBank Nat'l Ass'n v. Sargent,* 2000 ME 153, ¶ 35, 758 A.2d 528, and we review questions of law de novo, *see Toomey v. Town of Frye Island*, 2008 ME 44, ¶ 8, 943 A.2d 563.

[¶18]  A party seeking foreclosure by civil action must be "the mortgagee or any person claiming under the mortgagee," and must "certify proof of ownership of the mortgage note."  14 M.R.S. § 6321; *see also Bank of America, N.A. v. Cloutier,* 2013 ME 17, ¶¶ 11–16, 61 A.3d 1242.  In *Cloutier,* we held that the statutory phrase "certify proof of ownership of the mortgage note" requires a foreclosure plaintiff to "identify the owner or economic beneficiary and, if it is not itself the owner, prove that it has power to enforce the note."  *Cloutier,* 2013 ME 17, ¶ 21, 61 A.3d 1242.  *Cloutier* continues a line of precedent in which we have

connected a foreclosure plaintiff's right to bring a foreclosure action with its right to enforce the note, in accordance with the Maine Uniform Commercial Code pursuant to 11 M.R.S. § 3-1301. *See Cloutier*, 2013 ME 17, ¶ 16, 61 A.3d 1242; *JPMorgan Chase Bank v. Harp*, 2011 ME 5, ¶ 9 n.3, 10 A.3d 718; *Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2010 ME 79, ¶ 12, 2 A.3d 289.

[¶19]   Section 3-1301 expressly grants the right to enforce the note to nonholders who have possession and the rights of a holder.[5]   To qualify as a nonholder, section 3-1203, entitled "Transfer of instrument; rights acquired by transfer," requires competent evidence that Wells Fargo is a transferee in possession of the instrument:

> (1) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.
>
> (2) Transfer of an instrument . . . vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course . . . .

---

[5]  Section 3-1301 states, in pertinent part:

> "Person entitled to enforce" an instrument means:
>    (1) The holder of the instrument;
>    (2) A nonholder in possession of the instrument who has the rights of a holder;
>    . . .
> A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument . . . .

11 M.R.S. § 3-1301.  Both parties agree that the note is a negotiable instrument for the purpose of this section.

11 M.R.S. § 3-1203 (2012); U.C.C. § 3-203 cmt. 2, *included with* 11 M.R.S.A. § 3-1203 (1995) ("Proof of a transfer to the transferee by a holder is proof that the transferee has acquired the rights of a holder.").

[¶20] There is no dispute that Wells Fargo has possession of the note, which it produced into evidence at trial. We therefore consider solely the issue of whether Wells Fargo established a proper transfer of the note. A proper transfer requires competent evidence that MERS, as a holder, delivered the note to Wells Fargo for the purpose of giving Wells Fargo the right to enforce the note. *See* 11 M.R.S. § 3-1203(1); *FDIC v. Houde,* 90 F.3d 600, 605 (1st Cir. 1996) (interpreting Maine law). The Bureks contend that MERS was not a holder because there was no proof that MERS was itself a transferee of the note.[6] We disagree.

[¶21] The court received competent evidence from which it could deduce that when UFBI, the original lender and holder of the note, assigned the Bureks' mortgage to MERS, it also transferred "the note(s) and obligations therein described." Similarly, the court received competent evidence from which it could deduce that when MERS assigned the Bureks' mortgage to Wells Fargo, it also

---

[6] The Bureks also contend that MERS could not have had an interest in the note because of the earlier unrecorded assignment of the mortgage and note from UFBI to Fannie Mae. For reasons we have already discussed, this issue was not preserved for appellate review.

transferred "the Note and claim secured thereby."[7] The proof of these transfers was buttressed by the evidence of the November 2009 loan modification agreement between the Bureks and Wells Fargo, which was introduced into evidence without objection. That agreement plainly reflects the Bureks' and Wells Fargo's mutual understanding that, at a point in time after MERS's transfer of the note to Wells Fargo, Wells Fargo had the right to enforce the note.

[¶22] The Bureks further assert that our decision should be controlled by the First Circuit's holding in *FDIC v. Houde*, 90 F.3d 600 (1st Cir. 1996). In that case, the FDIC brought an action to enforce a note that was transferred to a bridge bank as part of bankruptcy proceedings of the original lender, Maine National Bank, and then purportedly from the bridge bank to the FDIC. *Id.* at 602. Although the FDIC had possession of the note, it could not produce any admissible proof of the transfer of the note from the bridge bank to it. *Id.* at 606. Accordingly, the court in *Houde* found that "the FDIC was without admissible evidence of its ownership of the Note" and that it, therefore, had failed to prove its right to enforce the note.

---

[7] MERS's status in this case is distinct from its status in other cases in which the express terms of the assignment limited MERS's role to that of a nominee. *See, e.g.*, *Saunders*, 2010 ME 79, ¶¶ 9–10, 2 A.3d 289 (holding that because the assignment limited MERS's role to that of a nominee, it held bare legal title to the property for the sole purpose of recording the mortgage and was not vested with the rights of the mortgage). Here, because the terms of the assignment of the mortgage did not make MERS a mere nominee, and because the assignment expressly transferred the right to enforce the note secured by the mortgage to MERS, we are not persuaded by the Bureks' contention that MERS, in this case and as a business practice, could not enforce or assign the mortgage or transfer the note.

*Id.* In this case, unlike in *Houde*, there was competent evidence to support the court's finding that a transfer from MERS to Wells Fargo had occurred.

[¶23] We are also unpersuaded by the Bureks' contention that the court erred in finding delivery of the note, an element of an effective transfer under section 3-1203, because Wells Fargo did not introduce direct evidence of the manner in which it obtained physical possession of the note. Delivery may be established by either or both direct and circumstantial evidence, together with the reasonable inferences that can be drawn from that evidence. *See* Field & Murray, *Maine Evidence* § 401.1 at 91–92 (6th ed. 2007) (observing that judges "assess the weight and reasonableness of the inference for which the evidence is offered" when determining the relevance of evidence). Here, the circumstantial evidence reasonably permitted the court to infer and therefore find that the note was delivered and that Wells Fargo was a transferee in possession of the instrument for purposes of section 3-1203.

[¶24] Thus, competent evidence supported the court's conclusion that Wells Fargo certified its proof of ownership of the mortgage note for purposes of 14 M.R.S. § 6321 by demonstrating that it was a nonholder in possession with the rights of a holder pursuant to 11 M.R.S. § 3-1301. We affirm the judgment on this basis and do not address whether, as Wells Fargo claims, the court erred in concluding that Wells Fargo did not qualify as a holder of the note.

The entry is:

Judgment affirmed.

_____

**On the briefs:**

Thomas A. Cox, Esq., Portland, and L. Scott Gould, Esq., Cape Elizabeth, for appellants Kenneth Burek and Shelley M. Burek

Mark A. Darling, Esq., Litchfield Cavo, LLP, Lynnfield, Massachusetts, for appellee Wells Fargo Bank, N.A.

**At oral argument:**

Thomas A. Cox, Esq., for appellants Kenneth Burek and Shelley M. Burek

Mark A. Darling, Esq., for appellee Wells Fargo Bank, N.A.

Cumberland County Superior Court docket number RE-2010-513
FOR CLERK REFERENCE ONLY