MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2017 ME 32
Docket:        And-16-139
Submitted
  On Briefs:   November 29, 2016
Decided:       February 28, 2017

Panel:         ALEXANDER, MEAD, JABAR, HJELM, and HUMPHREY, JJ.

JPMORGAN CHASE BANK, N.A.

v.

TERRANCE B. LOWELL et al.

HJELM, J.

[¶1]  Terrance B. Lowell appeals from a judgment of foreclosure in favor of JPMorgan Chase Bank, N.A., entered in the District Court (Lewiston, *Dow, J.*) after a bench trial.  Lowell argues that the court erred or abused its discretion by admitting certain documents pursuant to the business records exception to the hearsay rule, *see* M.R. Evid. 803(6), and by finding that the notice of default issued by JPMorgan complied with statutory requirements.  Although the court properly admitted the challenged documents in evidence, we agree that the notice of default was defective.  We therefore vacate the judgment and remand for entry of judgment for Lowell.

## I. BACKGROUND

[¶2] In March 2015, JPMorgan filed a complaint against Lowell seeking foreclosure on residential property located in Auburn.[1] JPMorgan alleged that Lowell had defaulted by failing to make payments due on a promissory note executed in favor of Wachovia Mortgage Corporation; that the note was secured by a mortgage in favor of Mortgage Electronic Registration Systems, Inc., (MERS), as nominee for Wachovia; and that, after several transactions, all rights created by the instruments had been assigned to JPMorgan.[2] Lowell filed an answer, which, as later amended, disputed many of the allegations in the complaint and asserted several affirmative defenses.

[¶3] The matter proceeded to trial in March 2016. To lay the foundation necessary for the admission of various documents as business records, *see* M.R. Evid. 803(6), JPMorgan presented the testimony of employee Frank Dean, who had worked for JPMorgan for five years and, at the time of

---

[1] The complaint named CitiBank (South Dakota), N.A., as a party-in-interest because Citibank allegedly holds a junior interest in the mortgaged property. *See* 14 M.R.S. § 6321 (2014), *amended by* P.L. 2015, ch. 229, § 1 (effective October 15, 2015) (codified at 14 M.R.S. § 6321 (2016)). CitiBank did not participate in either the trial court proceedings or this appeal.

[2] Among the records admitted in evidence at trial were copies of a 2012 assignment to JPMorgan from MERS, as nominee for Wachovia; and a separate 2014 quitclaim assignment of the mortgage to JPMorgan from Wells Fargo, which had merged with Wachovia in 2011. As a result of the quitclaim assignment, it appears that JPMorgan's standing to pursue this foreclosure action is not at issue, and Lowell does not contend otherwise. *See Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶¶ 9, 17, 96 A.3d 700 (concluding that a bank lacked standing to foreclose on the defendant's property when it failed to prove that it owned the mortgage that secured the defendant's loan).

trial, was a "mortgage banking research officer." Dean testified that his responsibilities in that position included reviewing "business records pertaining to residential mortgage loans," and that in preparation for trial he had "reviewed the electronic business records pertaining to [Lowell's] mortgage file," including the note, mortgage, assignments of the mortgage, and payment history. He further testified that he previously worked as a "bank branch loan officer" for JPMorgan and had been "responsible for meeting with bank customers, . . . developing residential mortgage applications, . . . processing mortgage loans, closing mortgage loans, and . . . handling customer service issues . . . such as payment applications." He stated that while assisting customers with loan payments he observed "how the system was accessed" by bank tellers at the time of payment, "where the information was entered, and how it was saved, and became a record." He explained that, based on this cumulative experience, he was familiar with how JPMorgan's business records were created, checked for accuracy, and accessed, and he confirmed that JPMorgan followed all procedures for maintaining the accuracy of the documents at issue in this case.

[¶4] Based on Dean's foundational testimony, JPMorgan introduced a number of documents in evidence, including the note and mortgage; the

4

notice of default and right to cure issued to Lowell by JPMorgan in January 2015; and Exhibit E, which consists of "screen prints" from JPMorgan's computer databases that show the charges and payments made on Lowell's loan between June 2006—which, Dean testified, is when JPMorgan acquired the note—and late February 2016. Dean stated that according to the computer printouts, Lowell had not made any payments on his loan since September 1, 2012.

[¶5] During Dean's testimony, Lowell made a general objection to the admission of JPMorgan's records pursuant to Rule 803(6). The court overruled the objection, rejecting Lowell's argument that JPMorgan was required to establish that Dean had knowledge about the creation of the records particular to this case. Lowell later objected specifically to the admission of some portions of Exhibit E that cover activity while JPMorgan owned the note, based on his assertion that Dean lacked personal knowledge about how various charges in the printouts were calculated and entered, and the court also overruled that objection.[3]

---

[3] Exhibit E also includes several pages that, Dean testified, JPMorgan received from Wachovia and that show activity on Lowell's account for the period between July 2004 and June 2006. Even to the extent that Lowell's objection encompassed that aspect of Exhibit E, he does not challenge the admission of those pages on appeal, and they are not material to our analysis, *see infra* n.6.

[¶6] Following the trial, on March 16, 2016, the court entered a judgment of foreclosure in favor of JPMorgan, finding that Lowell owed $125,000.33 on the note and mortgage, plus attorney fees and disbursements. Lowell timely appealed. *See* 14 M.R.S. § 1901 (2016); M.R. App. P. 2.

## II. DISCUSSION

[¶7] To be entitled to a judgment of foreclosure, JPMorgan was required to prove, among other things, "the amount due on the mortgage note, including any reasonable attorney fees and court costs," and service on Lowell of a notice of default and right to cure that complied with statutory requirements. *Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶ 18, 96 A.3d 700; *see also* 14 M.R.S. §§ 6111(1-A), 6322 (2014).[4] Lowell argues that the court erred by admitting JPMorgan's business records showing the amount due pursuant to the secured obligation, and that the notice of default was statutorily defective. We address these issues in turn.

A.    Evidence of Amount Due

[¶8] As evidence of the amount due, JPMorgan introduced Exhibit E, which consists of computer printouts from JPMorgan's databases showing

---

[4] Title 14 M.R.S. § 6111(1-A) has been amended since January 2015, when JPMorgan issued the notice of default. *See* P.L. 2015, ch. 36, §§ 1-2 (effective October 15, 2015) (codified at 14 M.R.S. § 6111 (2016)). All references to section 6111 are to the version of the statute in effect when the notice of default was issued.

6

charges and payments on Lowell's loan between June 2006 and late February 2016, a few weeks before trial, during which time JPMorgan owned the note. Although Lowell's brief does not directly cite Rule 803(6), he appears to argue that the court erred or abused its discretion by admitting Exhibit E as a business record. *See Am. Express Bank FSB v. Deering*, 2016 ME 117, ¶ 12, 145 A.3d 551 ("When admission of evidence under the business records exception to the hearsay rule is challenged, we review a trial court's foundational findings to support admissibility for clear error and its ultimate determination of admissibility for an abuse of discretion." (quotation marks omitted)). Lowell further asserts that the court erred by determining that Exhibit E, together with Dean's testimony, was sufficient to prove the amount due on the loan—a matter we review for clear error. *See Wells Fargo Bank, N.A. v. Burek*, 2013 ME 87, ¶ 17, 81 A.3d 330.

[¶9] As we have previously explained, "[b]usiness records are hearsay and therefore inadmissible pursuant to M.R. Evid. 802 unless they meet the requirements of the business records exception in M.R. Evid. 803(6)." *Ocean Communities Fed. Credit Union v. Roberge*, 2016 ME 118, ¶ 9, 144 A.3d 1178. Evidence qualifies for the business records exception if the necessary foundation is established by a witness who is a "custodian or another qualified

witness." M.R. Evid. 803(6)(D).[5] "A qualified witness is one who was intimately involved in the daily operation of the business and whose testimony showed the firsthand nature of his knowledge." *Roberge*, 2016 ME 118, ¶ 10, 144 A.3d 1178 (quotation marks omitted).

[¶10] Here, Dean testified in detail about JPMorgan's procedures for producing and retaining loan payment records, and he described his direct experience interacting with the departments that entered loan payments into the system. Based on this testimony, the court did not err by determining that Dean was qualified to establish the foundation for the admission of Exhibit E and that the testimony established the foundational requirements for the

---

[5] Maine Rule of Evidence 803(6) provides in full:

**(6)** **Records of a regularly conducted activity.** A record of an act, event, condition, opinion, or diagnosis [is not excluded by the rule against hearsay] if:

**(A)** The record was made at or near the time by—or from information transmitted by—someone with knowledge;

**(B)** The record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

**(C)** Making the record was a regular practice of that activity;

**(D)** All these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11), Rule 902(12) or with a statute permitting certification; and

**(E)** Neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

8

admission of that exhibit. *Id.* ¶ 11 (stating that "[o]nce the qualifications of the witness are established, the moving party must lay the necessary foundation for the admission of the documents as business records"). Further, the court did not err by determining, based in part on that exhibit, that JPMorgan had satisfied its burden to prove the amount due on the loan.[6]

[¶11] On appeal, Lowell also makes a brief reference to an argument that was developed more extensively at trial, namely, that Dean was not qualified to establish the foundation for the admission of Exhibit E because he lacked firsthand information about the specific transactions at issue here. To the extent that it is preserved, Lowell's challenge to the admission of Exhibit E based on Dean's lack of personal knowledge is not persuasive. If Dean had personal knowledge about the facts recorded in Exhibit E, JPMorgan would not have needed to invoke Rule 803(6) because Dean could have testified to the facts directly and without resort to documentation. Instead, the very purpose of Rule 803(6) is to allow the proponent to prove the contents of

---

[6] Additionally, we are unpersuaded by Lowell's argument that JPMorgan was required to present evidence of Wells Fargo's business records to prove the charges accruing pursuant to the mortgage between Lowell's default in September 2012 and the November 2014 assignment of the mortgage to JPMorgan from Wells Fargo. Exhibit E encompasses records that date back to June 2006, which, Dean testified, is when the note was first deposited in JPMorgan's vault. Those records show charges and payments related to both the note and the mortgage. Accordingly, all of the transactions relevant to determining the amount due on the loan were maintained in JPMorgan's records, not Wells Fargo's.

properly established business records through those records themselves, without the need for the foundation witness to have personal knowledge of the events or transactions described in those records.  *See Beneficial Maine Inc. v. Carter*, 2011 ME 77, ¶ 12, 25 A.3d 96 (stating that the purpose of Rule 803(6) is "to allow the consideration of a business record, without requiring firsthand testimony regarding the recorded facts, by supplying a witness whose knowledge of [the business's recordkeeping] practices . . . is sufficient to ensure the reliability and trustworthiness of the record"); *see also State v. Abdi*, 2015 ME 23, ¶ 17, 112 A.3d 360 ("The fact that the witness did not prepare or supervise the preparation of the record does not preclude the witness from providing the foundation for admissibility.").  The court did not err in admitting Exhibit E over this objection.

B.     Notice of Default and Right to Cure

[¶12]  Lowell next argues that the court erred by finding that the notice of default issued by JPMorgan strictly complies with the requirements established in 14 M.R.S. § 6111.  "We review a trial court's factual findings underlying a judgment of foreclosure for clear error . . . ."  *Wells Fargo Bank, N.A.*, 2013 ME 87, ¶ 17, 81 A.3d 330.

[¶13] By statute, a mortgagee may not accelerate or enforce a mortgage until at least thirty-five days have passed after giving written notice of the mortgagor's right to cure the default. 14 M.R.S. § 6111(1). The written notice must include, among other things, "[a]n itemization of all past due amounts causing the loan to be in default," and "[a]n itemization of any other charges that must be paid in order to cure the default." *Id.* § 6111(1-A)(B)-(C). We have previously explained that section 6111 "freezes" any amounts that may come due during the cure period, and that "the amount due as stated in the notice of default *is the precise amount that the mortgagor has thirty-five days to pay in order to cure the default*" and is not "open to any further accrual during [the cure] period." *Greenleaf*, 2014 ME 89, ¶¶ 29, 31, 96 A.3d 700 (emphasis added) (holding that a notice of default that instructed the mortgagor to contact the loan servicer "to obtain an up to date figure before sending payment" did not comply with section 6111(1-A)). This requirement is strictly enforced. *See id.* ¶¶ 18, 31.

[¶14] Here, the court made a general finding that a "proper notice of default was sent" to Lowell. The notice of default states as follows:

2. As of 01/16/2015, **total monthly payments (including principal, interest, and escrow if applicable)**, late fees, insufficient funds (NSF) fees, and other fees and advances due under the terms of your loan documents in the total

amount of $27,879.86 are past due. This past-due amount is itemized below. **If applicable, your account may have additional escrow amounts that have been paid out and are due on the Loan**. If you have any questions about the amounts detailed below, please contact us as soon as possible at 800-848-9380.

| | |
|---|---|
| Total Monthly Payments | $25,612.86 |
| Late Fees | $0.00 |
| NSF Fees | $0.00 |
| Other Fees* | $0.00 |
| Advances* | $2,267.00 |
| | |
| Amount Held in Suspense | $0.00 |

*Other Fees and Advances include those amounts assessed in accordance with your loan documents, and/or permitted by applicable law, or that were authorized for services rendered. If you need additional information regarding any of these amounts, please contact us at the number provided below.*

You may be responsible for paying late fees, inspection fees, and Broker's Price Opinion (BPO) fees that become due from the date of this letter through the expiration date set forth in Paragraph 3 below. If your next scheduled payment is made after its due date, you may incur an additional late fee of 36.48. However, this amount will not change the amount needed to cure the default pursuant to this letter.

3. You have the right to cure the default. **Action required to cure the default: You must pay the Total Monthly Payments listed in Paragraph 2 within 35 days from the date you are given this notice in order to cure this default**. All late fees, NSF fees, and other fees and advances are still valid and will need to be repaid under the terms of your loan documents. . . .

12

(Boldface added.)

[¶15]  Lowell argues that the notice does not strictly comply with the requirement that it include "[a]n itemization of any other charges that must be paid in order to cure the default," 14 M.R.S. § 6111(1-A)(C), because the notice does not state a sum certain that the borrower must pay in order to cure the default.  We agree for the following two reasons.

[¶16]  First, Paragraph 3 of the notice states that to cure the default, Lowell "must pay the [t]otal [m]onthly [p]ayments listed in Paragraph 2." Paragraph 2 lists—among other itemized past-due amounts—"[t]otal [m]onthly [p]ayments" in the amount of $25,612.86.  Earlier in Paragraph 2, however, the notice defines the phrase "total monthly payments" to mean "principal, interest, *and escrow if applicable*."  (Emphasis added.)  Paragraph 2 goes on to state, "If applicable, your account may have *additional escrow amounts that have been paid out and are due on the Loan*."  (Emphasis added.)

[¶17]  Pursuant to the mortgage, Lowell was required to include with each monthly payment an amount for "escrow items" including "taxes and special assessments," "leasehold payments or grounds rents," and "premiums for insurance."  The escrow component of the term "total monthly payments" as defined in the notice therefore specifically applies to Lowell's account.

[¶18]  The computer printouts in Exhibit E show that beginning in 2012, when Lowell stopped making payments, JPMorgan paid expenses that would have been covered by the escrow portion of Lowell's monthly payments. Because there were escrow amounts that had come due and which Lowell was required to pay as of the date when JPMorgan issued the notice of default, the notice meant that for Lowell to cure the default, he would be required to pay the "total monthly payments" due, which—as the notice itself defines that term—would include any *additional* escrow amounts that are *not* itemized in the notice.[7]   The notice therefore does not strictly comply with the requirement that it include "an *itemization* of any other charges that must be paid in order to cure the default."  14 M.R.S. § 6111(1-A)(C) (emphasis added). Rather, to determine whether any additional escrow amounts were due, Lowell would have had no choice but to contact JPMorgan, as the notice explicitly invited him to do.  Accordingly, regardless of whether there were *in fact* additional amounts due, the notice is not sufficient because it fails to state

---

[7]  We are not persuaded by Lowell's related argument that the notice of default and right to cure is defective because it refers to other amounts that Lowell may be obligated to pay pursuant to the note or mortgage, including late fees, inspection fees, "[b]roker's [p]rice [o]pinion" fees, and other unspecified charges.  The notice makes clear that the amount that Lowell was required to pay to avoid foreclosure did *not* include those ancillary charges—unlike escrow charges, which would change the amount of the payment needed to cure the default.  Any uncertainty regarding those ancillary charges therefore did not take the notice out of compliance with section 6111(1-A)(C) as interpreted in *Greenleaf*.

14

the "precise amount that the mortgagor has thirty-five days to pay in order to cure the default," *Greenleaf*, 2014 ME 89, ¶ 31, 96 A.3d 700, and, at best for JPMorgan, requires Lowell to obtain information from other sources to determine the amount he was required to pay to cure the default.

[¶19]  Second, the itemized list of past-due amounts in Paragraph 2 includes an entry for "[a]dvances" of $2,267.  The notice makes clear that the sum listed for "[a]dvances" is not a component of the $25,612.86 figure for "[t]otal [m]onthly [p]ayments."  *See id.*  During his testimony, however, Dean agreed that it is "possible" that the "[a]dvances" listed in the notice *did* encompass charges for taxes and insurance, which are identified as "escrow items" in Lowell's mortgage.  If the "possibility" acknowledged by Dean is true—i.e., that all or part of the past-due "[a]dvances" are for escrow items— then Lowell would have been required to pay some or all of those advances *in addition* to the "[t]otal [m]onthly [p]ayments" of $25,612.86 to cure the default.

[¶20]  Indeed, JPMorgan itself appears to be uncertain whether Lowell was required to pay the past-due "[a]dvances" to cure the default.  In JPMorgan's closing argument at trial, it asserted, "The notice of default in this case is perfectly clear.  It complies with the statute; it identifies exactly what's

required to cure the default, **$27,879.86"** (emphasis added)—that is, the sum of the "[t]otal [m]onthly [p]ayments" and "[a]dvances" itemized in the notice. In its brief on appeal, however, JPMorgan insists that "[t]he Notice plainly informed Lowell—or any other reader—that the Total Monthly Payments **($25,612.86)** was the amount required to cure the default." (Emphasis added.) That JPMorgan itself has not maintained a consistent interpretation of the notice is a further indication that the notice fails to precisely state the amount required to cure the default.

[¶21] For these reasons, the notice fails to specify the sum certain required to cure the default. The court therefore erred by finding that JPMorgan satisfied its burden to prove that the notice strictly complied with the requirement established in section 6111(1-A)(C), which is a required element of foreclosure. We vacate the judgment on that basis and remand for entry of judgment for Lowell.

The entry is:

> Judgment vacated. Remanded to the District
> Court for entry of judgment for Lowell.

Joshua Klein-Golden, Esq., Clifford & Golden, PA, Lisbon Falls, for appellant Terrance B. Lowell

Adam J. Shub, Esq., Preti Flaherty Beliveau & Pachios, LLP, Portland, for appellee JPMorgan Chase Bank, N.A.

Lewiston District Court docket number RE-2015-11
FOR CLERK REFERENCE ONLY