MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2023 ME 28
Docket:        Kno-22-276
Submitted
  On Briefs:   January 25, 2023
Decided:       May 9, 2023

Panel:         MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.

PAT DOE

v.

THOMAS LINDAHL

MEAD, J.

[¶1]  Thomas Lindahl appeals from a judgment entered in the District Court (Rockland, *Raimondi, J.*) granting his wife, Pat Doe,[1] a protection from abuse order against him.  Lindahl contends that the court's finding that he abused Doe within the meaning of 19-A M.R.S. § 4002(1)(B) (2022)[2] is clearly erroneous.  For the reasons noted below, we vacate the judgment.

---

[1]  "Pursuant to federal law, we do not identify the plaintiff because of a protection from abuse order between the parties, and we limit our description of events and locations to avoid revealing the identity or location of the party protected under a protection order as required by 18 U.S.C.S. § 2265(d)(3) (LEXIS through Pub. L. No. 117-214)." *Doe v. Hewson*, 2022 ME 60, ¶ 1 n.1, 288 A.3d 382 (alterations and quotation marks omitted).

Doe did not file a brief and did not participate in the appeal.

[2]  The Legislature recodified the protection from abuse statutes effective January 1, 2023. P.L. 2021, ch. 697, §§ A-2, A-3 (effective Jan. 1, 2023)(codified at 19-A M.R.S. §§ 4101-4116 (2023)). The recodification is not relevant to the analysis in this opinion.  "The bill does not make any substantive changes to existing law and is intended solely as reorganization of the existing statutes." L.D. 1696, Summary at 19 (130th Legis. 2022).

## I. BACKGROUND

[¶2] Doe and Lindahl have been married since 2012. Shortly after Lindahl filed for divorce in January 2022, Doe filed her first protection from abuse (PFA) complaint alleging abuse by Lindahl. In the complaint filed on February 28, 2022, Doe asserted many allegations of abuse, including that Lindahl had threatened to "throw [her] in a woodchipper." A temporary order of protection was granted the same day. At a hearing held on April 6, 2022, the court (*Martin, J.*) denied the complaint because Doe failed to prove her allegations, stating: "The Court finds [Doe's] testimony incredible."

[¶3] On April 22, 2022, sixteen days after the first PFA case was denied, Doe filed the PFA complaint at issue in this case. In this second PFA complaint, Doe alleged that Lindahl had come onto the marital property that morning "freaking out . . . demanding [to be] let in" and that she had to call 911. The complaint also alleged that "[Lindahl] said he's going to throw me out back in the woodchipper," without linking the threat to a particular date. Attached to the complaint was a statement dated April 14, 2022, that Doe said she had submitted to the police. The statement asserted that Lindahl "has threat[en]ed me many times that if I leave him he will 'ruin me and bury me,' that 'I'm going in the wood chipper out back,' 'put me in the bottom of his lobster trap,' or

'throw me in jail.'"  A temporary order of protection was granted (*Martin, J.*) the same day, barring Lindahl from entering the marital residence or going onto the property.  On May 13, 2022, the court amended the temporary order to allow Lindahl access to the residence during specific days and times so that Lindahl could retrieve certain items related to his commercial fishing business.

[¶4]  The final hearing on the second complaint was held on July 12, 2022.  Doe and her daughter both testified that Lindahl had made a threat of violence against Doe in April 2022.  Doe testified that a few days before April 22, she and Lindahl had a "big fight" during which he threatened to throw her into a woodchipper; her daughter testified that, at some point during April 2022, she heard Lindahl, while he was in the kitchen of the home, threaten to throw Doe into a woodchipper or a lobster trap.  During his testimony, Lindahl denied being in the house or speaking to Doe during April 2022.

[¶5]  On July 22, 2022, the court (*Raimondi, J.*) granted the PFA for one year, finding that there was a basis to Doe's complaint "under 19-A M.R.S. § 4002 (1)(B), which defines abuse as: Attempting to place or placing another in fear of bodily injury, regardless of intent, through any course of conduct, including threatening, harassing or tormenting behavior."  Concluding that Lindahl felt emboldened and empowered by the dismissal of the first PFA

4

complaint, the court noted what it stated was a credible threat Lindahl made on an unspecified date to throw Doe into a woodchipper. In a clear reference to Doe's daughter's testimony, the court found that Doe's daughter had witnessed the threat and had said that she would hang herself from the front porch if anything happened to her mother. Although both Doe and her daughter had testified that Lindahl had made the threat during April 2022, the court expressed uncertainty as to when the threat was made, but commented, "Even if the event occurred prior to the dismissal of the first Complaint for Protection from Abuse, the court is entitled to consider background and history in assessing this current complaint."

[¶6] The court also found that, on May 13, 2022, Lindahl entered the marital residence while Doe was cutting a client's hair in her salon and while waving his arms addressed Doe in a raised voice saying, "I need to get my stuff; remember what I said," and left, slamming the door. Lindahl also removed four four-wheelers from the property, which the court found was done in violation of the temporary order.

[¶7] The court's finding of abuse was based on its finding that Lindahl "has been engaging in threatening, harassing, and tormenting behavior, in an attempt to intimidate or create fear in" Doe. The court did not indicate whether

its finding of "threatening . . . behavior" was based on the woodchipper threat that the court found Lindahl had made on some indeterminate date before or after Doe's first PFA complaint.

[¶8] Lindahl moved for further findings of fact and conclusions of law and for reconsideration of the court's order. *See* M.R. Civ. P. 52(b); M.R. Civ. P. 59(e). The court summarily denied both motions. Lindahl timely appealed.

## II. DISCUSSION

[¶9] Lindahl challenges the sufficiency of the evidence supporting the court's finding of abuse. "We review a trial court's finding of abuse for clear error." *Walton v. Ireland*, 2014 ME 130, ¶ 22, 104 A.3d 883. "Clear error exists and requires reversal of a finding if (1) there is no competent evidence in the record to support it, or (2) it is based on a clear misapprehension by the trial court of the meaning of the evidence, or (3) the force and effect of the evidence, taken as a total entity, rationally persuades to a certainty that the finding is so against the great preponderance of the believable evidence that it does not represent the truth and right of the case." *Remick v. Martin*, 2014 ME 120, ¶ 7, 103 A.3d 552 (quotation marks omitted).

6

[¶10] "When a party's motion for further findings, M.R. Civ. P. 52(b), has been denied, we cannot infer findings from the evidence in the record." *Sulikowski v. Sulikowski*, 2019 ME 143, ¶ 11, 216 A.3d 893. "Instead, the court's judgment must be supported by express factual findings that are based on record evidence, are sufficient to support the result, and are sufficient to inform the parties and any reviewing court of the basis for the decision." *Klein v. Klein*, 2019 ME 85, ¶ 6, 208 A.3d 802 (alterations and quotation marks omitted). Because Lindahl's motion for further findings was denied, we limit our review to the express findings contained in the court's findings and conclusions issued in conjunction with the PFA order.

## A. The Woodchipper Statement

[¶11] Doe testified that it was the incident on April 22, 2022, along with the woodchipper threat that she testified Lindahl had made a few days before April 22, that precipitated her filing of the second PFA complaint. The April 22 incident involved Lindahl entering onto the property in an angry state, waving his arms, and demanding to be let into the garage. She testified that Lindahl addressed her in a raised voice saying, "I need to get my stuff; remember what I said," and left, slamming the door. Doe believed—incorrectly—that Lindahl was prohibited from being on the property that day.

[¶12]  Although Doe asserted in her April 22 complaint for PFA that Lindahl said ". . . he's going to throw me out back in the woodchipper," her testimony at trial clarified that his actual words on April 22 were, "Remember what I said," which she understood to refer to prior statements that she attributed to him regarding the woodchipper.

[¶13]  The court erroneously identified Lindahl's entry into the home as happening on May 13, 2022—a date occurring *after* the temporary order of protection on the second PFA complaint was entered—and therefore found that Lindahl had entered the residence in violation of that order.  The record does not contain any evidence suggesting that the events of April 22 occurred while a protection order was in effect.

[¶14]  The court heard Doe's testimony and Doe's daughter's testimony regarding Lindahl's alleged statement sometime during April 2022 that he would "throw [Doe] in a woodchipper," but did not make any finding about when the statement was made, and left open the possibility that it was made before Doe filed the first PFA complaint.  The issue of whether Lindahl made such a statement was part and parcel of the first PFA, which was denied by that court upon a finding that Doe was not credible.  The court here did not determine whether the threat described in its findings was made before or after

8

the dismissal of the first PFA complaint.  Only if the threat that the court found Lindahl had made was not the same threat as the threat alleged in Doe's first PFA complaint could that finding support the court's finding of abuse.

[¶15]  Based on that uncertainty in the court's findings, Lindahl invokes the doctrine of issue preclusion and asserts that the court's consideration of a statement attributed to him and litigated in the first PFA action (and apparently rejected by the court in that action) constituted error.  *See Fiduciary Tr. Co. v. Wheeler*, 2016 ME 26, ¶ 10, 132 A.3d 1178 (quotation marks omitted) ("Issue preclusion . . . prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and . . . the party estopped had a fair opportunity and incentive to litigate the issue in a prior proceeding.").  We do not agree.

[¶16]  Although the court's limited findings regarding the threat left open the possibility that it had occurred before Doe's first PFA complaint, the court's specific findings that both Doe and her daughter had heard the threat, and that the daughter had said that she would hang herself from the front porch if anything happened to her mother, leave no doubt that the findings refer to a threat that Doe and her daughter both testified Lindahl made at some point during April 2022.  Accordingly, contrary to Lindahl's argument, the evidence

was sufficient to allow the court to consider a "woodchipper" threat occurring during the month of April after the dismissal of the previous PFA complaint along with other evidence[3] for purposes of its analysis and finding that Lindahl had committed abuse by engaging in threatening behavior toward Doe.

## B.     Existence of Protective Order on April 22

[¶17]  The court erroneously identified Lindahl's entry to the home on April 22 as having occurred on May 13—a date occurring *after* the temporary order of protection on the second PFA complaint was entered.[4]  The record does not contain any evidence suggesting that the events described by Doe as occurring on April 22 occurred while a protection order was in effect.  Because the court's assumption that those events occurred while a protection order was in effect loomed large[5] in its conclusion that an act of abuse occurred,[6] we must vacate and remand for reconsideration by the trial court.

---

[3]  *See* Sections B and C below.

[4]   The court's conflation of the two dates is understandable given the trial testimony that fluctuated between the events of those days.

[5]  The court characterized Lindahl's violation of the order as being "blatant."

[6]  The court's findings do not indicate whether Lindahl's other acts (the woodchipper statement and the removal of the three four-wheelers) in the absence of a violation of a protection order were sufficient in its view to constitute abuse as defined in 19-A M.R.S. § 4002(1)(B).  Further, the court expressed some concern in its decision over whether Doe had actually been placed in fear by Lindahl's actions.

## C. Removal of the Four-Wheeler Vehicles on May 13

[¶18] On May 13, 2022, Lindahl arrived at the premises for the purposes of removing items related to his fishing occupation as allowed by the amendment to the temporary order. He removed four all-terrain vehicles from the premises. Although a single four-wheeler may have arguably been part of his fishing business, the remaining three were not, and he does not challenge that conclusion. Accordingly, as the court correctly found, his removal of three of the vehicles constituted a violation of the amended temporary PFA order.

## III. CONCLUSION

[¶19] Because the court's finding of abuse relied upon an erroneous assumption that the events that Doe described as happening on April 22, 2022, occurred on May 13, 2022 in violation of an amended temporary protection order, we vacate and remand for clarification of whether the court concludes that those events, which occurred at a time when no protection order was in effect, when considered independently or in conjunction with Lindahl's other acts, constituted abuse pursuant to 19-A M.R.S. § 4002(1)(B).

The entry is:

> Judgment vacated. Remanded for further
> proceedings consistent with this opinion.

Laura P. Shaw, Esq., Dirigo Law Group LLP, Camden, for appellant Thomas Lindahl

Appellee Pat Doe did not file a brief

Rockland District Court docket number PA-2022-50
FOR CLERK REFERENCE ONLY