MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2026 ME 49
Docket:        And-25-270
Submitted
  On Briefs:   January 21, 2026
Decided:       May 28, 2026

Panel:         STANFILL, C.J., and MEAD, DOUGLAS, and LIPEZ, JJ, and HJELM, A.R.J.
Concurrence:   HJELM, A.R.J.


# WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR BROUGHAM FUND I TRUST

v.

# LEONARD M. CORTELLINO et al.


MEAD, J.

[¶1]   Leonard M. Cortellino and Pauline A. Cortellino appeal from a judgment of foreclosure and sale entered by the Superior Court (Androscoggin County, *Archer, J.*), contending that the court erred in determining that, at the time of the foreclosure action, the mortgage at issue was owned by Wilmington Savings Fund Society, FSB, as Trustee for Brougham Fund I Trust  and that the court erred in concluding that the right-to-cure notice met the requirements of 14 M.R.S. § 6111 (2025).[1]   We conclude that the court did not err when it determined that Wilmington Savings owned the mortgage, but we determine

---

[1]   Title 14 M.R.S. § 6111 has since been amended, though not in any way that affects this appeal. *See* P.L. 2025, ch. 275, §§ 1-3 (effective Jan. 1, 2026) (codified at 14 M.R.S. § 6111 (1-A)(G), (H), (I) (2026)).

2

that, as a matter of law, the notice of right to cure was fatally defective. On that basis, we vacate the judgment and remand for entry of dismissal.

## I. BACKGROUND

[¶2] "The trial court made the following factual findings, which are supported by the record." *Wuestenberg v. Rancourt*, 2020 ME 25, ¶ 2, 226 A.3d 227. On June 20, 2006, the Cortellinos executed a promissory note in the principal amount of $293,250 in favor of Mortgage Lenders Network USA, Inc. (MLN) for the purchase of property in Lewiston. That same day, the Cortellinos executed a mortgage securing the note and encumbering the property. The mortgage was granted to Mortgage Electronic Registration Systems (MERS) "solely as nominee for" MLN. In August 2012, MERS purportedly assigned the mortgage to another entity, and it was later reassigned several more times, with the final assignment to Wilmington Savings in 2016. The note was endorsed several times; Wilmington Savings possessed the original note at the time of trial, permitting Wilmington Savings to enforce it. *See Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶¶ 9-10, 96 A.3d 700 (stating that a party that possesses a promissory note has standing to enforce it).

[¶3] On February 5, 2007, before the first assignment of the Cortellino mortgage, MLN filed for Chapter 11 bankruptcy. The United States Bankruptcy

Court for the District of Delaware entered a final decree and order closing the case on May 21, 2012. MLN ceased operating after the bankruptcy.

[¶4] In 2014, we issued our decision in *Greenleaf*, where we made clear that in order to establish standing to foreclose on a mortgaged property, the party seeking to foreclose must prove ownership of the mortgage. *See id.* ¶ 12. We specifically held that the assignment of a mortgage by MERS in that case was insufficient to transfer ownership of the mortgage. *Id.* ¶¶ 13-16. It subsequently became clear to the assignees of the mortgage in this case that assignment of the mortgage by MERS was similarly insufficient to transfer ownership of the Cortellino mortgage. Several mortgage lenders involved in the assignments, such as PHH Mortgage Corporation, were then faced with the problem of curing the defective assignment because MLN, the original lender, was no longer in business. On July 29, 2020, PHH petitioned the Chancery Court of Delaware for an appointment of a receiver for MLN, specifically to address the *Greenleaf* issues in Maine and to provide for the enforceability of mortgages that had been held by MLN. On February 5, 2021, the Court of Chancery appointed a receiver for MLN. The receiver then assigned the Cortellino mortgage from MLN to Wilmington Savings; that assignment was recorded on July 1, 2022.

4

[¶5]  In 2014, the Cortellinos breached the terms of the note and conditions of the mortgage by failing to make payments.  On August 12, 2022, BSI Financial Services, on behalf of Wilmington Savings, sent the Cortellinos a notice of default and right to cure based on the Cortellinos' default.  On October 28, 2022, Wilmington Savings filed a complaint against the Cortellinos seeking a judgment of foreclosure and damages associated with breach of the note.  The court conducted a trial on October 28, 2024, and, after the parties submitted written arguments and proposed findings, entered a judgment of foreclosure and sale on April 22, 2025.  The court also made written findings of fact and conclusions of law in support of its judgment.  The Cortellinos filed a motion for findings of fact on April 25, 2025, which was denied on June 1, 2025, in part because the Cortellinos failed to include proposed findings.  *See* M.R. Civ. P. 52(b).  The Cortellinos timely appealed.  *See* M.R. App. P. 2B(c)(2).

## II.  DISCUSSION

[¶6]  When we review a judgment of foreclosure, we review the trial court's factual findings for clear error and its legal conclusions de novo.  *Wells Fargo Bank, N.A. v. Burek*, 2013 ME 87, ¶ 17, 81 A.3d 330.  "When a party's motion for further findings has been denied, we cannot infer findings from the evidence in the record.  Instead, the court's judgment must be supported by

express factual findings that are based on record evidence, are sufficient to support the result, and are sufficient to inform the parties and any reviewing court of the basis for the decision." *Doe v. Lindahl*, 2023 ME 28, ¶ 10, 293 A.3d 439 (citations and quotation marks omitted). However, where—as here—a party has failed to submit proposed findings as required by M.R. Civ. P. 52(b), "we will infer that the trial court made any factual inferences needed to support its ultimate conclusion." *Sullivan v. Tardiff*, 2015 ME 121, ¶ 15, 124 A.3d 652 (quotation marks omitted).

[¶7] The Cortellinos argue that the court erred in concluding that Wilmington Savings owned the mortgage. Ownership of a mortgage is necessary to establish standing to pursue a foreclosure claim. *Greenleaf*, 2014 ME 89, ¶ 12, 96 A.3d 700. The parties agree that the rights contained in the mortgage were property of the MLN Chapter 11 bankruptcy estate. With support in the record, the court found that the Delaware court's post-bankruptcy order appointing a receiver for MLN was valid, enforceable, and entitled to full faith and credit. *See V.L. v. E.L.,* 577 U.S. 404, 407 (2016). Further, the court properly determined that the receiver's assignment of the mortgage to Wilmington Savings was within the scope of the receiver's authority, resulting in an enforceable transfer of the Cortellinos' mortgage to

6

Wilmington Savings. No evidence was presented to suggest that the mortgage was sold or otherwise transferred to a third party or that it reverted back to MLN. As a result, the court committed no error in determining that Wilmington Savings was the owner of the mortgage. *See Bureau v. Gendron*, 2001 ME 157, ¶ 11, 783 A.2d 643 ("If the trustee takes no action regarding the scheduled property during the bankruptcy proceeding, then the asset reverts back to the debtor by operation of law at the close of the bankruptcy proceeding.").

[¶8] Next, the Cortellinos assert that the right-to-cure notice did not meet the requirements of 14 M.R.S. § 6111 because the amounts stated as due in the notice did not reflect the actual amounts that the Cortellinos were required to pay to cure the default.[2]

[¶9] The notice states that, to cure the default, the Cortellinos must pay a total of $412,774.69, and provides a list of itemized charges that are included in this total amount. The Cortellinos are correct, however, that the itemized amounts listed in the notice do not add up to the total amount. Furthermore, one of the itemized charges is a total of the monthly mortgage payments owed by the Cortellinos. That total is broken down according to the various monthly

---

[2] The Cortellinos also assert that several of the charges listed in the notice cannot be the basis for a default. Those charges include bankruptcy expenses, unpaid escrows, and property inspection fees. Because we conclude that the notice was defective for other reasons, we do not address these challenges.

payments owed.  The sum of the various monthly payments owed listed in the notice, however, is different from the total amount stated for overdue monthly payments.[3]

[¶10]  A right-to-cure notice must include an "itemization of all past due amounts causing the loan to be in default," "the total amount due to cure the default," and "[a]n itemization of any other charges that must be paid in order to cure the default."  14 M.R.S. § 6111(1-A)(B)-(C).  Here, the notice contains an itemization of amounts, but the total of the itemized amounts does not equal the total included on the notice.  Further, the largest figure listed in the notice —total unpaid monthly charges—is different from the sum of the itemized

---

[3] The notice stated as follows:

The loan is due for 02/01/2013 and subsequent payments, plus late charges, fees and costs. As of today, the total amount due to cure the default is $412,774.69, which consists of the following:

| | |
|---|---|
| Next Payment Due Date: | 02/01/2013 |
| Total Monthly Payments Due: | $324,635.85 |
| (24 @ $1,968.90) | |
| (34 @ $1,968.89) | |
| (12 @ $6,913.41) | |
| (2 @ $2,858.98) | |
| (6 @ $2,917.69) | |
| (4 @ $2,866.94) | |
| (2 @ $2,900.12) | |
| (10 @ $2,893.55) | |
| Late Charges: | $22,685.86 |
| Other Fees: | |
| BKY FEES | $110.00 |
| LITIGATION COSTS | $852.50 |
| LITIGATION COSTS | $330.00 |
| BKY FEES | $110.00 |
| BKY COSTS | $1,167.00 |
| Escrow Advance: | $0.00 |
| Unapplied Balance: | ($0.00) |
| TOTAL YOU MUST PAY TO CURE DEFAULT: | $412,774.69 |

8

unpaid monthly charges. As a result, the notice fails to comply with section 6111 and is deficient as a matter of law because it fails to put the mortgagor on notice of what is required to cure the default. *See JPMorgan Chase Bank, N.A. v. Lowell*, 2017 ME 32, ¶¶ 13-21, 156 A.3d 727; *J.P. Morgan Mortg. Acquisition Corp. v. Moulton*, 2024 ME 13, ¶ 11, 314 A.3d 134.

[¶11] When a right-to-cure notice overstates the amount required to cure the default, the notice does not strictly comply with section 6111 and is therefore deficient. *See Moulton*, 2024 ME 13, ¶ 11, 314 A.3d 134. Here, the total of the itemized charges set out in the notice is lower than the total listed on the notice as required to cure the default. Therefore, the total amount required to cure the default is overstated. Because the notice is replete with numerical inconsistences and internal mathematical errors, it was materially insufficient to put the Cortellinos on notice of what was required to cure the default. Consequently, the court erred in concluding that the notice met the requirements of section 6111. *See id.*

[¶12] We therefore remand the case to the trial court for entry of an order dismissing the complaint.

The entry is:

> Judgment of foreclosure vacated.  Remanded to
> the Superior Court for entry of dismissal.[4]

———————

HJELM, A.R.J., concurring.

[¶13]  I join the Court's opinion in full, including the remand for entry of an order dismissing the foreclosure complaint rather than a judgment for the Cortellinos.[5]  Court's Opinion ¶ 12.  This is the result required by our decision in *Finch v. U.S. Bank, N.A.*, 2024 ME 2, ¶¶ 49-51, 307 A.3d 1049, which prescribes the law that now governs the effect of an adjudication that a notice of right to cure issued by a mortgagee is defective.  I write separately only to reiterate my view that *Finch* was wrongly decided.  *See id.* ¶¶ 53-91 (Hjelm, A.R.J., dissenting).  Nonetheless, it is controlling law, and for that reason, I must

———————

[4] As we noted in *Finch v. U.S. Bank, N.A.*, "A judgment that is based solely on a plaintiff's failure to meet a precondition to suit is not a judgment on the merits."  2024 ME 2, ¶ 32 n.10, 307 A.3d 1049 (quotation marks omitted).  We further stated that when a notice of right-to-cure fails to comply with section 6111, the court should "consider awarding attorney fees to the borrower pursuant to the applicable statute.  In appropriate cases, the court should also consider imposing sanctions and other relief available under the foreclosure statutes or its inherent authority, including dismissal with prejudice if it is appropriate."  *Id.* ¶ 51 (citation omitted).  On remand, the court may elect to allow the parties to be heard on any such issue.

[5] The remand, however, also allows for the court to consider any request for sanctions to be imposed against Wilmington Savings for pursuing a claim predicated on a clearly defective notice of right to cure.  *See* Court's Opinion n.4; *see also U.S. Bank, N.A. v. Jewett*, 2025 ME 94, ¶ 11, 347 A.3d 1011; *Finch v. U.S. Bank, N.A.*, 2024 ME 2, ¶ 51, 307 A.3d 1049.

concur that here, on remand, a mere dismissal of the complaint—and not a full judgment against Wilmington Savings—is the disposition compelled by that case.

---

E. Chris L'Hommedieu, Esq., L'Hommedieu Law Office, PA, Lewiston, for appellants Leonard Cortellino and Pauline Corellino

Adam J. Shub, Esq., and Jonathan Mermin, Esq., Preti, Flaherty, Beliveau & Pachios, LLP, Portland, for appellee Wilmington Savings Fund Society

Androscoggin County Superior Court docket number RE-2022-31
FOR CLERK REFERENCE ONLY